This case involves the involuntary commitment of a mentally ill person to the custody of the Alabama State Department of Mental Health.
In September, 1982, a petition to commit the appellant was filed by the mother of appellant in the Probate Court of Mobile County. A hearing was conducted at which the probate court found "probable cause" in that appellant represented a real and present threat of substantial harm to herself based on evidence of neglect and refusal to care for herself. Accordingly, the probate court ordered the appellant confined to the University of South Alabama Medical Center for treatment and evaluation.
Appellant was examined at the mental health center and diagnosed as paranoid schizophrenic with chronic and acute exacerbation. Following a hearing on the merits, the probate court found that appellant was mentally ill, and as a result of that condition, posed a substantial threat of harm to herself. Consequently, the court ordered that appellant be committed to Searcy Hospital for safekeeping and treatment. From that order, appellant through guardian ad litem, appeals.
The appellant, through able counsel, contends on appeal that the evidence does not support the probate court's actions and that the probate court erred regarding certain evidentiary matters. Appellant further contends that § 22-52-15 of the Alabama Code of 1975 is unconstitutional.
Section 22-52-10 sets the standard for the finding of facts in involuntary commitment proceedings. The trier of facts must find that the person sought to be committed is mentally ill and that as a consequence the person poses a real and present threat of substantial harm to herself or others. The threat of substantial harm must be evidenced by a recent, overt act. In addition, it must be found that treatment is available or that confinement is necessary to prevent the person from causing harm. Further, these findings must be based on "clear, unequivocal and convincing evidence." This court finds that the requirements of § 22-52-10 were met in the instant case.
Did the appellant pose a real and present threat of substantial harm to herself and manifest such by a recent overt act?
Evidence was introduced that for approximately one year preceding appellant's commitment she would not talk or respond to any attempts at conversation. She would not leave the house and would sometimes remain motionless in the same spot for as much as twenty-four hours at a time. Appellant would not eat or sleep for as long as thirty-six hours and then when she resumed eating she would consume only *Page 554 
very small amounts of food once a day. Appellant's mother testified that appellant had lost approximately fifty pounds within the eight months preceding the commitment hearing. At the time of the hearing, appellant weighed ninety-eight pounds.
This court has previously held that although a person does not threaten actual violence to herself, a person may be properly committed under the standard enunciated above if it can be shown that she is mentally ill, that her mental illness manifests itself in neglect or refusal to care for herself and that such neglect or refusal poses a real and present threat of substantial harm to her well being, and that she is incompetent to determine for herself whether treatment would be desirable.Walker v. Dance, 386 So.2d 475 (Ala.Civ.App. 1980).
The clinical psychologist who testified as an expert witness stated that appellant denied that she had any emotional or medical problems and denied the need for treatment. In addition, the psychologist testified that, in his opinion, if appellant was left to her own devises she would continue to withdraw, be seclusive and neglect herself. He further testified that most likely appellant would continue not to eat properly and that she would become increasingly withdrawn and delusional. Clearly, the record demonstrates that appellant poses a real and substantial threat to her own well being. In fact, the appellant's testimony on her own behalf indicates to this court that she is mentally ill and unable or unwilling to help herself.
In regard to the requirement that commitment be the least restrictive alternative necessary for the treatment of appellant's illness, the record provides ample evidence to convince this court that the probate court did not err in its actions.
The only expert witness to testify, the clinical psychologist and chief of In-Patient Services of the Mobile Mental Health Center, recommended commitment as the necessary course of action in treating appellant's illness. The evidence indicates that some type of out-patient treatment had been attempted prior to July, 1981, but that appellant had refused to cooperate and eventually stopped going to the doctor. Appellant also refused to take medication prescribed for her at that time.
The above also is an indication that commitment is the least restrictive alternative available for treatment. The expert witness testified that he was well aware of the other alternatives available, such as supervision in the home by her parents, out-patient treatment, or in-patient treatment on the weekends, but that these alternatives were discounted.
In view of the above, it is clear that the requirements of §22-52-10 concerning fact finding were met.
Appellant's next contention is that the probate court erred in certain evidentiary matters. We do not agree.
Specifically, appellant alleges that the probate court erred by questioning the expert witness about certain material issues. The questions complained of are as follows:
"Why do you — I think that you testified that her present condition — that her condition represents substantial harm to herself. Could you capsule why you feel it represents substantial harm to herself?", and,
"In your opinion, is she competent enough to determine the benefits of treatment?"
It is not only within the power of the court to propound questions to witnesses, but if justice requires it, or if it appears necessary, it is the duty of the court to do so, and such action cannot be construed as being prejudicial to the substantial rights of the defendant. Mitchell v. State, 57 Ala. App. 601, 329 So.2d 658, cert. denied, 295 Ala. 412,329 So.2d 663 (1976); Holmes v. State, 22 Ala. App. 373, 115 So. 849
(1928).
Certainly, the questions propounded by the probate court were an integral part of the case. Indeed, it is difficult to see how justice could be served unless the probate judge had those questions answered to his satisfaction. *Page 555 
Lastly, appellant contends that Ala. Code § 22-52-15 (1975) is unconstitutional. This court finds that appellant raises the question for the first time on appeal. Our appellate courts do not consider issues which were not first raised in a trial court. Liles v. Liles, 380 So.2d 908 (Ala.Civ.App. 1980).
No mention was made of the issue in the pleadings and, in fact, appellant's counsel merely objected to the unconstitutionality of the statute at the end of the hearing by making an oral statement to the trial court. The trial court did not even make any definitive response to counsel's statement. The above is insufficient to properly raise the issue.
Even if appellant had properly raised the issue at trial, the correct procedure on appeal for challenging the unconstitutionality of a statute was apparently not followed. This is so because it does not appear that appellant has complied with rule 44, A.R.A.P.
In view of the above, this case is due to be and is affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.