L. CHARLES WRIGHT, Retired Appellate Judge.
The Montgomery County Department of Human Resources filed a petition to terminate the parental rights of E.M. (mother) and S.M. (father) to their daughter, K.M, and their son, S.M. After oral proceedings, the trial court ordered the termination of all parental rights. The mother appeals.
The mother asserts that the trial court erred in terminating her parental rights because clear and convincing evidence was offered proving that she was physically, financially, and mentally able to care for the children. She further avers that termination was improper because DHR failed to make reasonable efforts toward reunification of the family.
In order to terminate parental rights based on the State’s petition, a court must make several findings. First, the court must determine that the child is dependent based on clear and convincing evidence. Second, the court must find that there exists no viable alternative to termination of the parent’s custodial rights. Ex parte Beasley, 564 So.2d 950 (Ala.1990). The trial court was presented the evidence ore tenus; therefore, its decision is presumed to be correct and will be set aside only if the record reveals the decision to be plainly and palpably wrong. Varnadore v. Department of Human Resources, 543 So.2d 1194 (Ala.Civ.App.1989).
Although a child’s parents have a prima facie right to custody, the paramount concern in these proceedings is the child’s best interests. Mitchell v. State Dep’t of Human Resources, 513 So.2d 647 (Ala.Civ.App.1987). In determining the child’s best interests, the court must examine whether the parents are physically, financially, and mentally' able to provide for their child. Mitchell. If clear and convincing evidence reveals that the parents cannot or are unwilling to discharge these responsibilities, parental rights may be terminated. Mitchell; § 26-18-7, Code 1975.
The record reflects that DHR became involved with the mother as early as 1971. In that year one of her former husbands filed a neglect complaint against her regarding their son. From that point on DHR had continual contact with her through the birth of six children and a reported five marriages and divorces. The mother reported that five of her seven children are living.
In 1972 one of the mother’s sons was placed in his maternal grandmother’s physical custody because of inadequate care. In 1983 the maternal grandmother also received temporary legal custody of the mother’s remaining two children. The mother never regained custody of these children.
S.M. and K.M., the children at issue, were born in 1985 and 1986, respectively.
In 1987 temporary legal custody of S.M. and K.M. was placed with DHR because of neglect, possible sexual abuse, and a physically abusive environment. The mother and the father were divorced shortly thereafter. Services were provided to the mother, and in August 1988 physical custody of the children was returned to the mother. In February 1989 the children were returned to foster care because the father had violated the court’s order and was residing in the home with the mother and the children. DHR was aware of the father’s abusive nature and determined that the *488 children would not be safe if allowed to remain in the home.
A termination petition was filed in April 1990. We cannot determine from the record what transpired concerning that petition. However, another petition for termination was filed in January 1991. The initial hearing on the January 1991 petition was held four months later and was continued until October 1991 by agreement of all the parties. At that time, K.M. was placed with her step-brother and his wife and S.M. remained in foster care. Hearings on the termination petition were held in November 1991, March 1992, and April 1992. By April 1992 the children had been in foster care for approximately five years.
At the time of the hearing, the mother was 38 years old and was on medication for seizures, asthma, and diabetes. She was unemployed. She testified that she received $412 per month in social security benefits. Her rent payment was $250 per month, and her utilities averaged approximately $150 per month. She received $165 per month in food stamp benefits.
The record indicated that the mother repeatedly had numerous, unrelated persons living in her house. The mother had a history of allowing people to be abusive to her. The persons, male and female, living with her changed from week to week, which caused DHR to be apprehensive about placing the children in such an environment. DHR repeatedly warned the mother that no visitors should be present during the children’s visits. The mother continued to have visitors present. There was evidence presented that in 1990 the mother’s older daughter, who was in the maternal grandmother’s custody, was raped by a man when she was visiting her mother.
The record reflects that DHR offered and provided services to the mother before and after the children were returned to foster care. Such services included parenting classes, a homemaker, mental health counseling, transportation, a psychiatric evaluation, monitoring and supervision of the children’s placement, case management counseling, visitation, and assistance with finances. The record indicates that the mother was not willing to take direction from DHR and that she consistently refused to comply with its requests.
DHR recommended that the parental rights be terminated because the parents had not met the requirements outlined by the department. It averred that since the children had been in its custody the department had seen no improvement in the mother’s situation that would warrant the children’s remaining in foster care for any further length of time. DHR requested that it be awarded permanent custody of S.M. so that he could be put up for adoption and that custody of K.M. be awarded to her step-brother.
In terminating the mother’s parental rights the trial court found, in pertinent part, the following:
“The mother, from time to time, has made a good faith effort to achieve the goals and objectives set for her by the court and the department. Her situation is not significantly different than at the time of the removal of the children and soon thereafter. There is little doubt that the mother desires the return of the children. However, the mother demonstrates few of the characteristics of a nurturing parent and the court doubts that the children would thrive emotionally in the care of their mother. The mother does seem to be able to manage her own life with help from professionals but the court questions whether she can provide a stimulating and safe environment for these two small children. The mother’s demeanor tends to support this observation.
[[Image here]]
“The department has expended more than reasonable efforts in attempts to reunite the children with their parents. While it is conceivable that continued efforts might lead to a trial placement of the children back in their mother’s home, there is reason to believe that such trial would be unsuccessful and that the children would thus again be removed from the mother’s home. The needs of the children for permanency, safety, stabili *489 ty, and emotional nurturing requires this court to closely consider whether the marginal fitness of the respective parents would warrant an award of custody to the parents and whether such award would be in the best interests of the children.”
We have carefully reviewed the record with the attendant presumptions in mind and find that there is clear and convincing evidence to support the trial court’s decision to terminate the mother’s parental rights. The guardian ad litem appointed to represent the interest of the children has filed a brief in this court strongly supporting the judgment of the trial court.
We now turn to the mother’s contention that DHR did not undertake reasonable efforts towards family reunification.
The mother insists that she has a right under the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620-628, 670-679, to reasonable preventive and reunification services in order to maintain family integrity. She contends that under the federal act, before a parent’s rights can be terminated, there must be clear and convincing evidence that the state made “reasonable efforts” to return the child to the parent’s home.
She argues that in reaching its decision the trial court failed to consider whether DHR “properly implemented its own policies designed to comply” with the federal act.
This issue surfaced for the first time on appeal, which precludes us from addressing it. Matter of Wilson, 431 So.2d 552 (Ala.Civ.App.1988). Nevertheless, the United States Supreme Court recently determined that the federal act, requiring a state plan to include a feature addressing “reasonable efforts,” leaves to the states the decision of how to comply with the provision and provides no implied right of action entitling an individual to bring suit under the act. Suter v. Artist M., — U.S. -, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992).
DHR filed this action pursuant to the Child Protection Act of 1984, § 26-18-1 through § 26-18-10, Code 1975. The factors listed in the act are nonexclusive. The trial court may consider any factors that are relevant to a child’s welfare. Matter of Colbert, 474 So.2d 1143 (Ala.Civ.App.1985). One factor provided by the act for the court to consider is whether reasonable efforts by DHR leading to the rehabilitation of the parents have failed. § 26-18-7(a)(6). In addressing this factor the trial court found that “[t]he department has expended more than reasonable efforts in an attempt to reunite the children with their parents.” The record supports this conclusion. DHR has consistently worked with the mother to no avail. The court below has had extensive contact with the mother of these children. It has reviewed the original determination of dependency regularly over the years. This court readily applies the presumption of correctness to its judgment.
The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.