This is an appeal by Alabama Power Company from a judgment of $75,000.00 rendered in the Circuit Court of Jefferson County, Bessemer Division, in favor of plaintiff-appellee, Morris Eugene Harmon. That judgment was based on a jury verdict.
This litigation arose from the following facts:
In April 1980, plaintiff went to defendant's Bessemer office and requested that defendant supply electricity to a house trailer plaintiff intended to move onto land that he owned.
Plaintiff alleged that defendant's employee, Ms. Donelly, told him that electrical power could not be supplied to the trailer until the trailer was moved onto the property and that electrical service would be connected within one week after the trailer was moved.
Plaintiff moved the trailer onto his real property in late April 1980, and shortly thereafter contacted defendant to have it connect his power. In order to supply the electricity to plaintiff's trailer, it was necessary that poles be set and wire strung from the nearest power source, across adjoining property, to plaintiff's lot. When plaintiff returned to defendant's office, he spoke with Mr. Eddings, who, a few days later, came to plaintiff's property to determine where to construct the service lines. Plaintiff testified at trial that he told Eddings that he had permission from an adjoining landowner, Parsons, for a power line right-of-way across Parsons' property. Plaintiff testified that Eddings wanted to construct the power line across other adjoining property owned by a Ms. Baton rather than across Parsons' property, and plaintiff told Eddings that he thought Eaton would not give permission for the right-of-way.
A short time later, plaintiff again contacted Eddings. Eddings and a Ms. Lovinguth, with South Central Bell Telephone Company, visited plaintiff's property to determine the best location for the right-of-way. Plaintiff was told by Eddings that Lovinguth was to obtain the right-of-way as part of a pole allocation agreement between defendant and South Central Bell.
In July 1980, plaintiff contacted the Alabama Public Service Commission, protesting the delay in obtaining electrical service. *Page 388 
The PSC inquired about plaintiff's complaint, and defendant responded by saying that plaintiff's property was "landlocked" and electrical service could not be supplied until a right-of-way was obtained. Plaintiff stated that he contacted Eddings and Lovinguth several times after he received the Commission's reply, informing them of Parsons's agreement to give a right-of-way. The right-of-way from Parsons was ultimately obtained and the construction of the line and poles was completed in February 1981.
Immediately following completion of the construction, Eddings phoned Jefferson County Inspection Services and received notice that all necessary inspections had been performed by the County and that the defendant had permission to install the electrical meter and complete the electrical service to plaintiff's trailer. Plaintiff received electrical service on February 13, 1981.
Plaintiff filed suit against defendant, and after amendment, alleged misrepresentation and breach of contract based upon an alleged oral contract arising from a promise of defendant's agent that plaintiff would have electrical service within one week after moving his trailer onto his property. Plaintiff claimed compensatory damages for breach of contract, including damages for mental anguish resulting from the ten-month delay in obtaining electrical service.
At the close of plaintiff's case, the trial court granted defendant's motion for directed verdict as to plaintiff's misrepresentation count, but denied defendant's directed verdict motion as to the breach of contract count.
The trial court charged the jury regarding damages for breach of contract and the jury returned a verdict for plaintiff for $75,000.00. Defendant appealed to this Court following the trial court's denial of defendant's motions for JNOV and new trial.
The following issues are raised on appeal:
 1. Was the jury verdict against the great weight of the evidence?
 2. Was the jury award of damages excessive under the evidence?
 3. Did the trial court err by not directing a verdict in defendant's favor on the ground of impossibility of performance?
 4. Did the trial court err by allowing plaintiff's counsel to examine defendant's claims adjuster regarding the claims adjuster's investigation of the dispute?
 5. Did the trial court err by not directing a verdict in defendant's favor based upon a company service regulation approved by the Alabama Public Service Commission?
We are of the opinion that each of the above questions must be answered in the negative. We affirm the judgment of the trial court.
 I.
On appeal, our review of the jury's verdict is governed by the principles reiterated in Mahoney v. Forsman,437 So.2d 1030, 1033 (Ala. 1983), wherein the Court stated:
 There is a very strong presumption in this state in favor of upholding jury verdicts on appeal. Wagner v. Winn-Dixie, 399 So.2d 295 (Ala. 1981); Trans-South-Rent-A-Car, Inc. v. Wein, 378 So.2d 725
(Ala. 1979). A denial of a motion for a new trial strengthens the presumption of correctness of the jury's verdict. Shiver v. Waites, 408 So.2d 502
(Ala. 1981); Cecil Crews Chevrolet-Oldsmobile, Inc. v. Williams, 394 So.2d 912 (Ala. 1981). This court must review the tendencies of the evidence most favorable to the prevailing party and indulge such inferences as the jury was free to draw. Cooper v. Peturis, 384 So.2d 1087 (Ala. 1980); Wiggins v. McLeod, 371 So.2d 660 (Ala. 1979). The reviewing court will not reverse a judgment based on a jury verdict unless the evidence is so preponderant against the verdict as to clearly indicate that it was wrong and unjust. Cecil Crews *Page 389 Chevrolet-Oldsmobile, Inc. v. Williams, supra.
We cannot say that the evidence in the instant case was so preponderantly against the verdict that it was wrong and unjust. The record reveals conflicting testimony. The plaintiff testified that Donnelly promised electrical service to plaintiff's trailer within a specified time, and Donnelly testified that no such promise was made by her to the plaintiff. This testimony gave rise to a fact issue for the jury — one that the jury decided in favor of the plaintiff.
 II.
We are not of the opinion that the jury verdict of $75,000.00 was excessive under the evidence in this case. The award was to compensate plaintiff for his mental anguish arising from defendant's breach of contract. It is well-settled in Alabama that mental anguish is a recoverable element of damages arising from breach of contract "where the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering. . . ." B MHomes, Inc. v. Hogan, 376 So.2d 667, 671 (Ala. 1979) (citations omitted); see also Alabama Pattern Jury Instructions: Civil, § 10.28 (1984 cum.supp.).
In addition, claims for damages for mental anguish need not be predicated upon the presence of physical symptoms. B MHomes, Inc., supra. The plaintiff is only required to present some evidence of mental anguish, and once the plaintiff has done so, the question of damages for mental anguish is for the jury. Id.
This Court has often recognized that there is no fixed standard for the jury's determination of the amount of compensatory damages to award for mental anguish and that absent clear abuse or the presence of passion, prejudice, partiality, or corruption in the jury's award, the amount awarded is left to the jury's sound discretion. Alabama PowerCo. v. Mosely, 294 Ala. 394, 399, 318 So.2d 260 (1975); Durhamv. Sims, 279 Ala. 516, 187 So.2d 558 (1966). Also, the jury's verdict is presumed correct and this presumption is buttressed when, as in the present case, the trial court denies a motion for a new trial. Durham, supra.
In the instant case, the plaintiff testified that because of defendant's delay in supplying power, the plaintiff, his wife, and his two-month-old baby were forced to live with plaintiff's sister and to sleep on the floor of his sister's home. Plaintiff and his family moved to the trailer when the weather cooled in the fall and relied upon a kerosene lantern for light and a wood stove for heat. The plaintiff also testified that he was upset by relying upon others to provide shelter for his family, felt inadequate in his family obligations, and felt as if everything was "falling in on him." Moreover, although strongly denied by Eddings, plaintiff testified that when he told Eddings about his situation, Eddings responded that the defendant company was not a service for indigents. Based upon this evidence, we are of the opinion that it was within the jury's discretion to award the damages for mental anguish that it did, and being aware of the difficulty of assessing damages for mental anguish, we cannot find that the jury's verdict was based upon passion or other improper motive.
 III.
The defendant next argues that the trial court erred by failing to direct a verdict in its favor on plaintiff's breach of contract claim because of impossibility of performance. Defendant contended at trial that before defendant could connect its power line to plaintiff's meter, plaintiff was obligated to (1) move his trailer onto the property; (2) obtain necessary inspections by Jefferson County personnel; and (3) notify Jefferson County personnel to "release" the electric meter so the defendant could hook up. The record reveals that plaintiff satisfied requirements (1) and (2) on, or before, May 1, 1980. Defendant *Page 390 
obtained a right-of-way and installed the poles and lines to plaintiff's trailer on or shortly prior to February 13, 1981, and, at that time, discovered that no final release of the electric meter by Jefferson County had occurred. Eddings called Jefferson County Inspection Services and the necessary release was obtained, whereupon defendant made the final electrical connection. Defendant contends that because defendant could not legally have connected its line to plaintiff's meter prior to the Jefferson County release being obtained by plaintiff, it was impossible for defendant to perform its contract with plaintiff as allegedly agreed.
We dispose of defendant's argument by reaffirming that this Court has not recognized the defense of impossibility or impracticability under the circumstances to which defendants seek to assert the defense in the instant case. See Silvermanv. Charmac, Inc., 414 So.2d 892 (Ala. 1982). The trial court did not err on this ground.
 IV.
Defendant also asserts that the trial court erred by allowing plaintiff's counsel to examine defendant's claims adjuster, Williamson, as an adverse witness pursuant to A.R.Civ.P. 43 (b). At trial, defense counsel objected to the questioning of Williamson on the grounds that the information sought was derived from Williamson's investigation of the facts surrounding the litigation, in anticipation of litigation, and was, therefore, privileged. Defense counsel also objected to the questioning as hearsay. The gist of the questioning by plaintiff's counsel was whether any employee of defendant told plaintiff that the delay in supplying power to plaintiff was because plaintiff failed to obtain the necessary inspections or release. Williamson ultimately responded that he had no knowledge that any such statement was made to plaintiff.
With regard to defendant's assertion that the testimony elicited from Williamson was privileged, we conclude that this argument is inapplicable in the instant case. This Court has held that materials developed through an investigation conducted by an insurer's claims adjuster in anticipation of litigation are not discoverable by a plaintiff in an action against the insured without a showing by the plaintiff of substantial need of the materials for case preparation and an inability to obtain the substantial equivalent of the materials by other means. Ex parte State Farm Mut. Auto. Ins. Co.,386 So.2d 1133 (Ala. 1980); A.R.Civ.P. 26 (b). However, we are unwilling to hold that a corporate party can designate an in-house claims adjuster who investigated the incident made the basis of the litigation as a company representative at trial and then cloak that individual with a privileged status when the opposing party attempts to examine the representative about the defendant's position at trial concerning the disputed matter.
In the present case, Williamson was a claims adjuster for the defendant. Williamson was also referred to by defense counsel as the defendant's representative and sat at defense counsel's table throughout the trial in that designated capacity. As the defendant company's representative, Williamson was subject to being called as an adverse witness by plaintiff, and plaintiff was entitled to question Williamson regarding the defendant's position at trial, just as the plaintiff would have been entitled to question any party about these matters. A party cannot use the investigator status of a representative to defeat that person's representative capacity at trial and thereby preclude the adverse party's right to examine the representative party.
Hearsay evidence has been defined by this Court "as evidence of an out-of-court statement offered to show the truth of the matter asserted." Lavett v. Lavett, 414 So.2d 907 (Ala. 1982). An out-of-court statement offered at trial not to prove the truth of the matter asserted in the statement but, rather, to prove that the statement was made, is not hearsay, so long as the fact the statement was made is relevant to some issue at trial. Bryant v. *Page 391 Moss, 295 Ala. 339, 329 So.2d 538 (1976). We are of the opinion that the testimony elicited from Williamson in the present case was not offered to prove the truth of the matters asserted therein, but merely to show that the statements were, or were not, made by defendant's employees.
The following excerpt from the record is representative of the exchange between plaintiff's counsel and Williamson at trial:
 Q. Do I understand that you did not connect electrical power because of what your lawyer said in opening statement that because Mr. Harmon had not made arrangements with the county for inspection?
A. This is true, partly. . . .
. . . .
 Q. Is it your testimony that someone at the power company told Mr. Harmon on any occasion that the reason you were withholding power was that he had failed to have the property inspected?
THE COURT: Hold your answer. Is there an objection?
MR. CASEY: Object to hearsay.
 THE COURT: The objection is overruled. Answer the question.
A. Yes.
. . . .
 Q. Mr. Williamson, I asked you to state whether or not anyone with the power company ever told Mr. Harmon before giving him service that the reason he was being refused service was that he had not had the Jefferson County Inspection Services inspect the premises, and you answered yes, they had told him. Do you remember that?
A. I don't know the answer to that.
Q. Is that now your answer?
A. I don't know whether anyone did or not.
 Q. Regardless of what your answer was then, is your answer now that you do not know whether or not the power company told Mr. Harmon that? Is that now your answer?
A. That's correct. I don't know.
 Q. Thank you. And is it now true, sir, that the reason was not included in the reasons for not giving him service communicated to the Alabama Public Service Commission in July of 1980?
A. That's correct.
In defense of plaintiff's claim, defendant contended at trial that plaintiff should not recover, or that plaintiff's recovery should be reduced, because of plaintiff's failure to obtain the final release of his utilities by the Jefferson County Inspection Department. The trial judge charged the jury that plaintiff had a duty to mitigate his damages and could not take advantage of a failure of performance by defendant that was caused by the plaintiff. The fact that plaintiff was, or was not, notified by defendant of his alleged obligation to obtain the release and the time that such notice, if any, was received by plaintiff, was relevant on the issue of damages.
The trial court did not err by allowing the testimony of Williamson over defense counsel's hearsay objection.
 V.
Finally, defendant asserts that the trial court erred by not directing a verdict in its favor based upon a service regulation approved by the Alabama Public Service Commission. The regulation relied upon by defendant reads as follows:
 It is understood that no statement or representation of any employee or officer of the company shall bind the Company, unless the same be in writing and approved by the signature of an authorized representative of the Company, and that no employee or officer of the Company is authorized to waive this condition.
We adhere to this Court's previous ruling in Compton v. AlabamaPower Co., 216 Ala. 558, 114 So. 46 (1927), wherein the Court held an identical regulation invalid as an unauthorized formulation of substantive law by an administrative body.
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur. *Page 392