723 So.2d 572 (1998)
KMART CORPORATION and Ray Jones
v.
Joyce KYLES.
1961790
Supreme Court of Alabama.
May 22, 1998.
Opinion on Return to Remand October 30, 1998.
Rehearing Denied February 26, 1999.
*573 David F. Daniell of Richardson, Daniell, Spear & Upton, P.C., Mobile, for appellants.
Daniel B. Feldman of Hammond, Feldman & Lehane, P.C., Birmingham; James R. Morgan, Birmingham; and Mark D. McKnight, Birmingham, for appellee.
LYONS, Justice.
Joyce Kyles sued Kmart Corporation and a former employee of Kmart, Ray Jones, alleging malicious prosecution. After two mistrials in which the juries could not reach a unanimous verdict, the jury in a third trial returned a verdict in favor of Kyles, awarding her $100,000 in compensatory damages and $100,000 in punitive damages. The trial court denied the defendants' motion for a judgment as a matter of law,[1] a new trial, or a remittitur of damages. The defendants appeal from a judgment entered on the jury verdict. We affirm conditionally.

I.
The parties to this appeal disagree on many important facts. However, because this appeal is from the trial court's denial of a motion for a judgment as a matter of law or a new trial, we are bound to view the evidence in a light most favorable to the nonmovant. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996); King Motor Co. v. Wilson, 612 So.2d 1153 (Ala.1992). Accordingly, where the evidence in the record is disputed, we present it in a light most favorable to Kyles.
One day in August 1989, a check-out supervisor at a Kmart store in the Mobile area saw two persons loading lawn chairs from the front of the store into the bed of a small red pickup truck that looked as if it had a white camper shell over the bed of the truck.[2] The supervisor determined that the lawn chairs had not been paid for and proceeded to inform Ray Jones, the store's loss control manager. Jones, who was also a Mobile County constable, saw a male and a female loading *574 lawn chairs into the pickup truck. He approached the truck as it began to drive away, but the driver evaded him and the vehicle departed from the store. Jones followed in his own automobile, which bore the insignia of a constable's vehicle. Eventually, the truck pulled over and Jones questioned the driver, a woman, about the lawn chairs. He asked to see a receipt for the chairs, but the driver could not produce one. Jones then asked the driver for her driver's license. The driver showed Jones that she had a license, but did not give it to him. Jones contends that he saw the name "Kyles" on the license. Jones told the woman that she needed to follow him back to the Kmart store because the chairs had not been paid for. The woman responded by telling her male passenger to get out of the truck and unload the lawn chairs, and the man unloaded most of the chairs. The pickup truck then drove off, while Jones remained at the scene to collect the lawn chairs. Jones contends he wrote down the license plate number of the truck before it left and that the license plate was for a pickup truck registered to Robert Kyles.
Jones reported the alleged offense to the Mobile County Sheriff's Department a few days later, on August 15, 1989. The report contains a description of the female suspect that is similar to Kyles. However, the report listed the suspect as "unknown," rather than as a woman with the last name Kyles. The sheriff's department report also contains the following narrative written by a sheriff's deputy:
"Comp. [complainant] advised he witnessed 2 subjects loading lawn chairs & cushions into a red Nissan P/U, 88-89 model reg. to Robert L. Kyles, P.O. Box 394, St. Elmo, 87 Nissan P/U. Comp. chased suspect down Theodore-Dawes [Road] & stopped vehicle on Theodore-Dawes before the overpass and asked for i.d. and receipt, which she refused to comply. Later she stated she didn't have any receipt & left [the] scene. Suspect stopped again at Compac & at that time they threw some of the property out of the truck & fled [the] scene."
One evening a few days later, Jones drove to Joyce Kyles's home in St. Elmo. He wore his constable's uniform and sidearm and was accompanied by another constable. He asked to see "Mrs. Kyles, the wife of Robert Kyles who drives a red truck." Kyles was sitting with her family in the front yard of their home at the time, and she identified herself to Jones. Jones then told Kyles that she needed to go to the Kmart store to pay for the lawn chairs she had stolen. Kyles told Jones that she had not been in a Kmart store recently, had not stolen any lawn chairs, that Jones had never spoken to her before, and that she did not know what he was talking about. Jones responded by cursing at Kyles; then Kyles told him to leave, and he did.
Although Robert Kyles owned a red Nissan pickup truck at that time, it did not have a white camper shell. Instead, the truck had a roll bar and had a plywood cover over the bed of the truck that could hinge open in order for items to be placed in the bed.
Jones drove to the office of the Mobile County Sheriff's Department and met with a detective. Shortly thereafter, two sheriff's deputies, not accompanied by Jones, drove to Kyles's residence and asked if they could search the property for the lawn chairs that Jones had accused her of stealing. Kyles allowed the deputies to search her home and yard, but they did not find the chairs and left the premises.
On August 21, 1989, Jones executed an affidavit in support of an arrest warrant for Kyles. Jones's affidavit stated that Kyles and an unknown man had stolen 19 lawn chairs from Kmart and had put them in a small red pickup truck, but had thrown 14 of the chairs out of the truck after he had stopped it.
No action was taken by the sheriff's department in relation to the arrest warrant for Kyles until a day in March 1992, when she was stopped by police officers as part of a routine stop of traffic to check for driver's licenses. When one of the officers ran a computer check on her license number, he learned of the outstanding warrant and arrested her. Kyles was then transported by a sheriff's department vehicle to the county *575 jail. At the jail, Kyles was processed and fingerprinted, and she learned that she had been arrested because of the warrant Jones had sworn out for her arrest. Kyles telephoned her husband, who went to the jail and obtained her release on bond. Kyles had spent nearly three hours in the jail.
After a preliminary hearing, the district court found probable cause to support Kyles's arrest on the felony charge of theft of property in the second degree and sent the matter to the grand jury. However, the grand jury eventually "no-billed" the charge. Kyles spent $3,900 in attorney fees defending the criminal charge. She then filed this civil action against Kmart and Jones. As noted above, this case has been tried three times, with the jury finally reaching a unanimous verdict in favor of Kyles after two mistrials. On this appeal by Kmart and Jones, our review is limited to the testimony and evidence presented to the jury in the third trial.

II.
Kmart and Jones raise several issues relating to the trial court's denial of their motion for a judgment as a matter of law, a new trial, or a remittitur of damages: (1) Did the trial court err in refusing to grant the defendants a new trial based on the defendant's claim that the trial court itself improperly questioned Jones regarding his powers as a constable and by doing so prejudiced the jury against him? (2) Did the plaintiff present sufficient evidence in support of her claim of malicious prosecution to rebut the defendants' prima facie showing of probable cause? (3) Did the trial court err in denying the defendants' motion to remit the compensatory damages award? (4) Did the trial court err in submitting the issue of punitive damages to the jury, and, if not, did the trial court err in denying the defendants' motion to remit the punitive damages award?

III.
Kmart and Jones argue that they should receive a new trial because, they say, during trial the judge questioned Jones regarding his powers as a constable and questioned him in such a manner as to prejudice the jury against the defendants. On this basis, they argue that the trial court erred in denying their motion for a mistrial and their subsequent motion for a new trial. Although the defendants acknowledge that Rule 614, Ala. R. Evid., allows a trial judge to interrogate any witness, they contend that the trial judge's action here was improper because, they say, the manner in which the judge questioned Jones left the jury with the perception that Jones, as a constable, had the power to arrest the two people in the truck for theft and escape, and in not doing so failed in his duties as a constable. The defendants further argue that the manner in which the trial judge questioned Jones left the jury with the impression that the judge did not believe Jones's testimony, and they argue that the problem was compounded by Kyles's counsel's later noting that possibility to the jury in closing arguments. Kmart and Jones note that during deliberations the jury sent a question to the judge asking whether the "constable issue" was a law issue or a fact issue, and that the judge informed them that it was a fact issue that he could not comment on. The defendants say that it is clear that the judge's questioning of Jones prejudiced Jones and Kmart in the eyes of the jury, and they argue that the trial court should have granted either their motion for a mistrial or their motion for a new trial.
In response, Kyles first notes that the trial judge has not only the right but the duty to ask questions of a witness necessary to prevent the jury from misunderstanding the evidence. Then she says that the fact that the answers given to the judge's questioning may be perceived as more favorable to one party than the other does not render the questioning improper. Kyles contends that the judge's questions to Jones were not improper because, she says, they were asked merely to elicit a clarification of certain facts, they were not asked in an adversarial manner, and in asking them the judge was not acting as an advocate for one side. She notes that after the trial judge denied the defendants' motion for a mistrial, the judge offered to give the jury a curative instruction regarding the questioning but that the defendants declined the offer. Kyles argues that the trial court *576 did not err in denying the defendants' motion for a mistrial or their motion for a new trial.
Rule 614 of the Alabama Rules of Evidence states:
"(a) Calling by Court. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.
"(b) Interrogation by Court. The court may interrogate witnesses, whether they were called by the court or by a party.

"(c) Objections. Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present."
(Emphasis added.) Rule 614 expresses the law as it existed in Alabama before the adoption of the Rules of Evidence: that it is within the power of the trial court to propound questions to witnesses, and it is the duty of the court to do so if justice requires, so long as the court does not depart from the standard of fairness and impartiality. Affiliated FM Ins. Co. v. Stephens Enterprises, 641 So.2d 780 (Ala.1994); Stroud v. State, 592 So.2d 653 (Ala.Cr.App.1991); Matter of Wilson, 431 So.2d 552 (Ala.Civ.App.1983). See, also, Advisory Committee's Notes to Rule 614.
The defendants' counsel was the first to inform the jury that Jones had been a constable as well as a Kmart employee. He informed them of that fact during his opening statement. Thereafter, Jones's status as a constable, and the powers of that elected officer, were at issue in the trial. The trial judge asked several questions relating to what other actions Jones could have taken as a constable when faced with the situation Jones had explained in his testimony. We conclude that, under the facts of this case and the circumstances of this trial, the questions were not unfair to the defendants and that the trial judge did not abuse his discretion in asking the questions. The trial court did not err in questioning Jones.

IV.
Kmart and Jones argue that the trial court erred in denying their motion for a judgment as a matter of law because, they say, the plaintiff failed to present sufficient evidence in support of her claim for malicious prosecution to rebut their prima facie showing that her arrest was supported by a finding of probable cause. They note that in the felony theft case against Kyles, which underlies her malicious prosecution claim, the district court made an express finding of probable cause and sent the case to the grand jury. Kmart and Jones further contend that Kyles failed to present substantial evidence that they had acted with malice in instigating the criminal charges against her, one of the necessary elements of a malicious prosecution claim. In sum, the defendants argue that Kyles failed to present sufficient evidence for the trial court to submit her claim to the jury.
In response, Kyles argues that she did present sufficient evidence to rebut the defendants' prima facie showing of probable cause for her arrest. Kyles contends that she presented evidence indicating that the defendants' showing of probable cause was based on perjury, fraud, false testimony, or other misconduct. She says that the evidence at trial indicated that her arrest was based solely on Jones's identifying her as the person who stole the lawn chairs, and she notes that on Jones's initial report to the sheriff's department he identified the suspect as someone "unknown," even though he stated that he had seen her driver's license when he stopped the pickup truck. Kyles claims that Jones admitted during the trial that at the preliminary hearing on her criminal charge he had given false testimony to promote her prosecution. Kyles also claims that Jones did not report the theft of lawn chairs to the sheriff's department until several days after the crime; she says this delay allowed Jones time to find a residence with a small red pickup truck, to obtain the vehicle's license number, and then to report that number as the license number of the truck used to steal the lawn chairs. In other words, Kyles argues that Jones fabricated his testimony against her in order to claim he had caught the person who had stolen the lawn chairs.
*577 In order for a claim for malicious prosecution to be submitted to a jury, the trial court must find that the plaintiff has presented substantial evidence of the following elements: (1) that a prior judicial proceeding was instituted by the present defendant, (2) that in that prior proceeding the present defendant acted without probable cause and with malice, (3) that the prior proceeding ended in favor of the present plaintiff, and (4) that the present plaintiff was damaged as a result of the prior proceeding. Fina Oil & Chemical Co. v. Hood, 621 So.2d 253 (Ala.1993); Delchamps, Inc. v. Larry, 613 So.2d 1235 (Ala.1992). Viewing the evidence in a light most favorable to Kyles, as we must, given that as to the request for a judgment as a matter of law or a new trial she was the nonmovant, we conclude that the trial court did not err in submitting the malicious prosecution claim to the jury and that a reasonable jury could have concluded that Kyles had met her burden of proof. The first, third, and fourth elements noted above are undisputed. We note certain inconsistencies between Jones's testimony at the preliminary hearing, where the district court judge made a finding of probable cause, and at the trial of this action; those inconsistencies, considered with other evidence presented by Kyles, constitute substantial evidence indicating that in seeking Kyles's arrest the defendants acted without probable cause and with malice. At the trial, Jones admitted that at the preliminary hearing he had given false testimony with regard to a number of facts that were critical in establishing the connection between Kyles and the alleged theft.

V.
Kmart and Jones argue that the jury's $100,000 compensatory damages award is not supported by the evidence. They say that Kyles's testimony as to the harm she suffered was limited to the facts that she was arrested, that she spent a few hours in jail, and that she had to pay approximately $4,000 in attorney fees and to secure a bail bond. They say that Jones presented no evidence of mental anguish or suffering caused by those events, such as medical expenses or sleeplessness, worry, or other psychological injury. They contend that Kyles's trial counsel made a tactical decision to limit the kind of testimony that had opened up Kyles to impeachment evidence on cross-examination in the earlier two trials. Thus, Kmart and Jones say that there is no evidence to support an award of compensatory damages to Kyles in excess of $4,000 and that the trial court should have either remitted the compensatory damages award or granted their motion for a new trial.
In response, Kyles argues that the jury's compensatory damages award is reasonable and is rationally related to the evidence she presented at trial. She says that in addition to the sums she paid for attorney fees and a bail bond, she presented evidence that she had been subjected to an unannounced and potentially violent confrontation by two armed constables who, in front of her family and friends, accused her of theft; that she was forced to undergo a search of her residence by two sheriff's deputies; that during a routine traffic stop two years later she was arrested and then jailed on a false charge; and that she had to go through a grand jury hearing before the charge was dismissed. She contends that these events were undoubtedly traumatic and that she suffered great emotional distress as a natural consequence. Kyles says that the jury found she had suffered mental anguish and that this Court has recognized that an award of damages for mental anguish is within the sound discretion of the jury.
After thoroughly reviewing the trial record, we conclude that the defendants are correct in their assertion that Kyles failed to present evidence of mental anguish or psychological injury sufficient to support the jury's award of $100,000 in compensatory damages. Although Kyles presented substantial evidence indicating that certain events occurred, i.e., her questioning by Jones and the sheriff's deputies, her arrest, and her nearly three hours' incarceration, she presented no testimony or other evidence indicating that those events caused her to suffer great mental anguish. The only evidence of Kyles's alleged mental suffering was her husband's testimony that she cried on *578 one occasionwhen she telephoned him to say that she had been arrested.
Under Alabama law, the presence of physical injury or physical symptoms is not a prerequisite for a claim for damages for mental anguish. Alabama Power Co. v. Harmon, 483 So.2d 386 (Ala.1986). "The plaintiff is only required to present some evidence of mental anguish, and once the plaintiff has done so, the question of damages for mental anguish is for the jury." Harmon, 483 So.2d at 389. The amount of the jury's award is left to the jury's sound discretion, and the jury's award will not be set aside absent a clear abuse of discretion. Id. Also, a jury's verdict is presumed correct, and that presumption is strengthened by the trial court's denial of a motion for new trial. Id. But, here we must address the strength of the presumption in light of the plaintiff's failure to testify about the nature of her alleged mental anguish.
At the turn of the century, the form of proof of mental anguish was indirect. For example, in Western Union Telegraph Co. v. McMorris, 158 Ala. 563, 573, 48 So. 349, 353 (1908), the Court held:
"[I]n Alabama, ... in cases where wounded feelings or mental pain form an element of recoverable damages, direct proof of such suffering is not necessary, but it may be inferred by the jury from circumstances attending the particular breach of duty or contract ...."
(Citations omitted.)
McMorris stated the law in an era during which it was not permissible for a witness to give testimony as to his or her own mental anguish. This principle was based on the general rule prohibiting testimony by a witness as to his uncommunicated mental intent or state of mind. The rule that allowed an inference of suffering from simply a description of the circumstances is understandable, because there was no direct method of proof by testimony of the victim.
The rule excluding testimony about one's own mental anguish in Alabama has evolved in a line of cases reviewed in Hardie v. State, 260 Ala. 75, 68 So.2d 35 (1953). There the Court referred to the early case of Stewart v. State, 78 Ala. 436, 437 (1885), barring testimony of a witness that he "was in a fright," and noting that while Stewart was frequently followed in ensuing cases, in most of the cases following it the excluded testimony had to do with a witness's motive or intent rather than the witnesses's emotional state.
The turning point occurred in Alabama Power Co. v. Edwards, 219 Ala. 162, 166, 121 So. 543, 546 (1929), where a witness was permitted to testify "I was scared." After discussing Stewart and Edwards, the Hardie Court then discusses Ingram v. State, 252 Ala. 497, 500, 42 So.2d 36, 38 (1949), where testimony as to a witness's fear was found admissible for the reason that the emotion of fear is an "involuntary physical effect" and "for that reason it is different from the mere voluntary mental action of entertaining a motive or intention which was not communicated or otherwise expressed." 260 Ala. at 80, 68 So.2d at 39.
We now clearly allow the testimony of a witness as to his or her mental anguish. The question thus remains, in the present era, when we permit a witness to offer evidence as to the witness's own mental anguish, is indirect evidence of mental anguish alone sufficient to support a substantial verdict? We answer this question in the negative. We give stricter scrutiny to an award of mental anguish where the victim has offered little or no direct evidence concerning the degree of suffering he or she has experienced. See Foster v. Life Ins. Co. of Georgia, 656 So.2d 333, 337 (Ala.1994), where the Court stated:
"We recognize that mental anguish and emotional distress are not items for which a precise amount of damages can be assessed; thus, in considering whether a jury verdict for compensatory damages is excessive, we must view the evidence from the plaintiff's perspective and determine what the evidence supports in terms of the plaintiff's suffering. Pitt v. Century II, Inc., 631 So.2d 235 (Ala.1993). In this case, the only evidence regarding Foster's mental anguish and emotional distress is her bare assertion that the discovery of fraud affected her `a lot' and that she sued two months after the mental anguish and *579 emotional distress began. From this limited evidence, we agree that the jury could infer that Foster suffered some measure of mental anguish and emotional distress from the realization that she had been paying over a fifth of her monthly income to an insurance company for a worthless policy; however, we hold that, even when viewed in a light most favorable to her, Foster's scant testimony of mental anguish and emotional distress, without more, does not support an award exceeding $120,000 for each of the two months before she sued. We conclude that the $250,000 compensatory damages award was excessive by $200,000."
Unlike the plaintiff in the instant case, the plaintiff in Foster at least testified to the issue of mental anguish by saying that the discovery of the fraud affected her "a lot." See, also, Sears, Roebuck & Co. v. Harris, 630 So.2d 1018, 1033 (Ala.1993), cert. denied, 511 U.S. 1128, 114 S.Ct. 2135, 128 L.Ed.2d 865 (1994), where the Court reduced a mental anguish verdict from $750,000 to $1 in a setting where the victim of the mental anguish did not testify.
The plaintiff here did not testify about her mental anguish in this trial. There were two prior hung juries leading to mistrials in this case. In the earlier trials, the plaintiff had testified that she "went crazy"; that she was too embarrassed to shop, even when she had money in her pocket, for fear of being accused again of shoplifting; and that she had attempted suicide three times and had sought help at a psychiatric hospital. On this third trial, the plaintiff apparently had good reason not to subject herself to further cross-examination on the extent of her mental anguish, because of evidence of a prior arrest and incarceration that was successfully exploited in the two earlier trials. Thus, in light of the paucity of evidence presented by the plaintiff in this case, we conclude that the jury abused its discretion in awarding her $100,000 in compensatory damages.[3] Kyles presented evidence that she paid approximately $4,000 in attorney fees to defend the criminal action. Thus, we conclude the jury awarded more than $90,000 for mental anguish damages even though Kyles presented no evidence of severe mental anguish. We believe that the greatest amount of compensatory damages a jury, using sound discretion, could have awarded Kyles is $15,000. Accordingly, we conclude that the trial court erred in denying the defendants' motion for a remittitur of damages or a new trial. If the plaintiff does not accept a remittitur of the compensatory damages award from $100,000 to the sum of $15,000, the defendants must be granted a new trial.

VI.
Kmart and Jones next argue that the trial court erred in denying their motion for a judgment as a matter of law as to punitive damages and in denying their motion for a judgment as a matter of law, a new trial, or a remittitur of the punitive damages. They note that the purpose of punitive damages is to punish a wrongdoer, and they say that they did nothing wrong in making a criminal complaint against Kyles. They say that it is not their fault that the arrest warrant was not served on Kyles for more than two years, or that during the years before Kyles's malicious prosecution action went to trial one of the employee witnesses died and the Kmart store was closed. They note that the district judge made a finding of probable cause that supports Kyles's arrest, and they argue that the fact that the grand jury no-billed the matter does not mean that they had acted with malice in seeking Kyles's prosecution. In sum, Kmart and Jones argue that Kyles failed to present clear and convincing evidence of malice or wantonness, which is necessary to support an award of punitive damages. However, they also argue that even if it can be said that an award of punitive damages could be warranted, the award in this case is excessive.
*580 In response, Kyles argues that an award of punitive damages was warranted and that the $100,000 award is not excessive in comparison to the $100,000 compensatory damages award. She contends that Jones lied under oath to further her prosecution and that his doing so is proof that Kmart and Jones acted maliciously toward her, and, therefore, she contends, punitive damages are warranted. Kyles then argues that the award is not excessive because, she says, the reprehensibility of the defendants' conduct was great, the ratio of punitive to compensatory damages is only 1:1, and the penalty for perjury, which she says Jones committed, is punishable by both fines and imprisonment. In sum, she argues that the amount of the punitive damages award must be taken as reasonable when reviewed under the guidelines set out in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).
Viewing the evidence in a light most favorable to Kyles, as we must, given that as to the judgment as a matter of law and new trial motions she was the nonmovant, we conclude that she presented substantial evidence indicating that the defendants acted with malice in pursuing the criminal charge against her. Thus, the trial court properly submitted the issue of punitive damages to the jury and properly denied the defendants' motion for a judgment as a matter of law as to the issue of punitive damages. However, we have ruled that Kyles should accept a remittitur of her compensatory damages award to $15,000, or else the defendants shall receive a new trial; if Kyles accepts that remittitur, then the ratio of punitive to compensatory damages will no longer be 1:1. Accordingly, if Kyles accepts a remittitur of the compensatory damages award, we believe it necessary for the trial court to hold a new Hammond[4] hearing on the question of excessiveness of the punitive damages award.

VII.
The trial court's order denying the defendants' motion for a new trial is affirmed on the condition that the plaintiff file with this Court within 21 days a remittitur of compensatory damages to the sum of $15,000; otherwise, the judgment will be reversed and this cause remanded for a new trial. The trial court's order denying the defendants' motion for a judgment as a matter of law as to the issue of punitive damages is affirmed; however, if the plaintiff accepts a remittitur of compensatory damages, then the trial court is to hold a new Hammond hearing and to make a return to this Court within 60 days of the date of the filing of the remittitur.
AFFIRMED CONDITIONALLY AS TO THE COMPENSATORY AWARD; REMANDED CONDITIONALLY FOR A NEW HEARING AS TO THE PUNITIVE AWARD.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, and SEE, JJ., concur.
ALMON and COOK, JJ., concur in part and dissent in part.
ALMON, Justice (concurring in part and dissenting in part).
I agree that the plaintiff, Joyce Kyles, presented sufficient evidence of malicious prosecution to submit the claim to the jury, and that the circuit court correctly denied the motion by the defendants, Kmart Corporation and Ray Jones, for a judgment as a matter of law. I dissent from the decision to condition an affirmance of the denial of the defendants' motion for a new trial on the plaintiff's accepting a remittitur of $85,000 of the compensatory damages awarded by the jury and the circuit court.
The majority opinion emphasizes the fact that Kyles did not give direct testimony as to her mental anguish. However, I would hold that the circuit court properly concluded that the evidence allowed the jury to infer that Kyles had suffered significant mental anguish that was caused by the defendants' tortious conduct. The evidence showed that, while she was in her yard, with family and friends present, armed constables accused her of theft; that sheriff's deputies searched her house and yard; and that she was arrested more than two years later based on the *581 same accusation of theft. The jury found that the accusation of theft was false, even that it was maliciously contrived by Jones while he was acting as an agent of Kmart. In my judgment, this evidence would support a verdict of significantly more than $15,000 in compensatory damages, and I see no basis for interfering with the jury's verdict, particularly since the presumption in favor of that verdict has been strengthened by the circuit court's decision not to set it aside and not to order a remittitur.
Because I would not order a remittitur of the compensatory damages, I would not send the cause back for any further proceedings on the question of punitive damages. The culpability as found by the jury was great, and the jury awarded punitive damages and compensatory damages in a one-to-one ratio.
I see no error in the circuit court's denial of the defendants' motion for a remittitur or a new trial. I would simply affirm the judgment.
COOK, J., concurs.

On Return to Remand
LYONS, Justice.
The defendants, Kmart Corporation and Ray Jones, appealed from a judgment entered in favor of the plaintiff, Joyce Kyles. Kyles had sued Kmart and Jones, alleging malicious prosecution; a jury awarded Kyles $100,000 in compensatory damages and $100,000 in punitive damages. The trial court entered a judgment on that verdict. This Court affirmed the judgment as to the compensatory damages award, on the condition that Kyles file with this Court a remittitur of compensatory damages to the sum of $15,000. See Kmart Corp. v. Kyles, 723 So.2d 572 (Ala.1998). In addition, we affirmed the trial court's order denying the defendants' motion for a judgment as a matter of law as to the punitive damages award, but remanded the cause conditionally with instructions for the trial court to hold a new hearing on the question of excessiveness of the punitive damages award if the plaintiff accepted the remittitur of compensatory damages. Id. The plaintiff filed her remittitur on June 11, 1998. Pursuant to our instructions, the trial court, on July 16, 1998, on remand, held a hearing pursuant to Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989). The trial court reaffirmed the earlier punitive award of $100,000. The trial court made its return to this Court on August 10, 1998. The only issue now before us is whether the punitive damages award of $100,000 is excessive. Kmart and Jones contend it is.
The trial court entered the following thorough and well-reasoned order:

"I. PROCEDURAL HISTORY
"Per Order of the Supreme Court, see Kmart Corp. v. Kyles, 723 So.2d 572 (Ala. 1998), this cause was remanded for a hearing to determine whether the award of punitive damages in the amount of $100,000 was excessive, in the event the Plaintiff accepted a remittitur of the compensatory damages award to the sum of $15,000.00. The Plaintiff filed a remittitur on June 11, 1998, and, as mandated, a second [hearing pursuant to] Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), ... was held on July 16, 1998. After due consideration of the facts as presented at trial and the hearing, arguments of counsel, and precedential authorities, this Court enters the following Order affirming the jury's award of $100,000.00 in punitive damages.
"II. STATEMENT OF FACTS
"A basic rendition of the facts is stated in the opinion of the Supreme Court .... That account, however, neither captures the egregiousness of defendants' conduct nor chronicles [the inconsistencies in the defendant Jones's testimony]. An objective assessment of what Jones did and what Kmart failed to do is essential to a fair and legally correct evaluation of the jury's punitive damages award.
"Jones's most serious transgression is that he lied under oath at the preliminary hearing of Ms. Kyles so that the prosecution would continue and Ms. Kyles would be prosecuted for a felony:

*582 "`Q. When you appeared at the District Court and offered testimony to Judge Matranga, you gave false testimony; is that correct?
"`A. That I did, yes, sir, because of her attorney.
"`Q. And that was in order so the prosecution of Mrs. Kyles would go even further, is that correct?
"`A. Beg your pardon? I don't
"`Q. The purpose of your appearing in District Court and offering that testimony that you gave was to make Joyce Kyles's prosecution continue on so she would get prosecuted for a felony?
"`A. That is correct.
"`Q. Is that correct?
"`A. That's why I testified, yes, sir.'
"Other examples exist, but the truth is evidentMs. Kyles's case was bound over to the Grand Jury in large measure because of the admitted perjury of Ray Jones.
"Mr. Jones's testimony, moreover, is replete with inconsistencies: (1) depending on who asked the questions, Jones alternatively did not know, then knew, who Joyce Kyles was; (2) the truck involved in the alleged theft, which occurred in Jones's presence, had a camper on the back, the Kyleses' truck did not; and (3) the incident report prepared by the deputy, which was based on information provided and verified by Jones, lists the suspect as `unknown,' even though Jones testified the suspect's driver's license bore the name `Kyles.'
"The chronicle of Jones's transgressions continues. Without probable cause, he admittedly went to the Kyles home and confronted [Ms. Kyles] with an unsubstantiated allegation that she was a criminal. He did not make an arrest on the spot for a felony he says occurred in his presence. He did not report the incident to law enforcement promptly; rather, he waited a few days. Finally, he authenticated the veracity of an inaccurate official investigative report which he admits he did not read.
"In sum, the recklessness and deceit of Ray Jones led to the arrest of a person for committing a felony, two and one half years after the alleged event, in spite of the absence of even a modicum of probable cause. His conduct, as Kmart's agent, manifests a gross insensitivity to the most fundamental rights accorded every citizen, a disregard for the rule of law, and an ignorance of fundamental law enforcement practices and procedures.
"III. CONCLUSIONS OF LAW
"After having analyzed the facts of this case pursuant to the factors mandated by the Supreme Court in [BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)], the additional factors suggested by the courts in Hammond and Green Oil, and the factors outlined in Ala. Code 1975, § 6-11-23(b), this Court concludes that the punitive damages award of $100,000 was not excessive.
"A. The award of punitive damages in this case was not excessive.

"In [BMW], the Supreme Court addressed the constitutional challenges to punitive damages awards and announced a decision requiring states to judicially review jury verdicts that award punitive damages to determine whether such verdicts violate the tortfeasors' rights under the Due Process Clause of the United States Constitution. The Supreme Court emphasized that this post-verdict judicial review must be meaningful, with special emphasis being given to three `guideposts': (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio of punitive damages to the amount of actual or potential harm suffered by the plaintiff; and (3) a comparison of the amount of the jury's verdict with civil or criminal penalties (if any) that could be imposed under the law for comparable misconduct. 517 U.S. at 1598-1603, 116 S.Ct. 2518.
"[The Alabama Supreme Court] has instituted certain `protections' in an effort to assess the constitutionality of a punitive damages award. These factors are commonly referred to as the `Hammond /Green Oil factors.' See Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); *583 Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989). The commonly cited factors are: (1) the harm likely to occur and the harm that actually occurred; (2) the degree of reprehensibility of the defendant's conduct; (3) the financial gain to the defendant from the behavior; (4) the financial position of the defendant; (5) the cost of the litigation; (6) any available criminal sanctions; (7) similar civil actions.
"While the United States Supreme Court has mandated an analysis pursuant to the factors cited above, it did not prohibit the consideration of other factors as well. The courts of this state continue to utilize the factors set down in Hammond and Green Oil, as well as the factors set out in § 6-11-23(b). See American Pioneer Life Ins. Co. v. Williamson, 704 So.2d 1361 (Ala.1997); Talent Tree Personnel Services, Inc. v. Fleenor, 703 So.2d 917 (Ala.1997).
"This Court has conducted an analysis of the facts of this case pursuant to the factors outlined above and makes the following conclusions:
"1. Degree of reprehensibility of the defendant's conduct.
"In BMW, the United States Supreme Court noted that the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct. See BMW, [517 U.S. at 575, 116 S.Ct. 1589]. In this case, there is a clear pattern of oppressive conduct by Ray Jones, who was acting in his capacity as an agent of Kmart.
"Nothing is more reprehensible that a prosecution based on perjury. Ray Jones admitted he perjured himself so that Joyce Kyles would be criminally prosecuted. (R. 133, 134). Jones testified that he had seen the name Kyles on the license and had gotten [Kyles's] license plate number. However, the Sheriff's Department report listed the name of the driver of the truck as `unknown.' This Court finds Jones's testimony suspect and gives it little weight. Jones, without legal justification, appeared, armed and in uniform, at the Plaintiff's residence and confronted her. He discovered no stolen property.
"Jones executed an affidavit in support of an arrest warrant for Kyles, which verified as true that Kyles and an unknown man had stolen 19 chairs from Kmart and had put them in a small red pickup truck, despite evidence to the contrary. The arrest warrant was not served for over two years, until the Plaintiff was stopped during a routine license check. She was arrested and taken to jail for a three-hour period.
"The evidence presented provided substantial proof of conduct on the part of the Defendants that the jury could reasonably determine was gross, oppressive, or malicious. The conduct of Jones takes ineptitude to a new plateau. The [Defendants'] actions were certainly reprehensible enough to support the jury's award of punitive damages in the amount of $100,000.
"In assessing the reprehensibility of [a] Defendant's conduct, the courts have considered numerous factors, including:
"a. Degree of defendant's awareness of any hazard which his conduct has caused or is likely to cause.
"Jones, as a constable, should certainly have been aware of the consequences of his cumulative errors and misdeeds. With no evidence to support his actions, Jones, due to malice, ... and recklessness, pursued a course of conduct which he knew or should have known would lead to the unlawful arrest of a seemingly innocent person.
"b. Any concealment or `cover up' of the hazard.
"Jones attempted to conceal the paucity of evidence establishing the Plaintiff as the shoplifter by himself committing a felony perjury.
"c. Existence and frequency of similar past conduct.
"This court is not aware of any past similar conduct involving these Defendants.
"d. Quality and quantity of rights of others that were disregarded by the defendant.

*584 "The rights of others were not affected by the Defendant's conduct.
"e. Nature and extent of efforts on the part of the defendant to remedy the wrong.
"Neither the corporate nor [the] individual defendant made any effort to remedy this wrong, and the record is devoid of any [evidence of] oversight or review of [Jones's] conduct by Kmart.
"f. Opportunity or lack of opportunity the plaintiff gave the defendant to remedy the wrong.
"The Plaintiff was not aware of the Defendants' actions until she was arrested. Therefore, this factor does not [apply].
"2. Ratio between the amount of compensatory damages and [the amount of] punitive damages awarded.
"The ratio of punitive damages to compensatory damages now stands at 6.6 to 1. This Court has reviewed current caselaw and notes that the ratio of punitive damages to compensatory damages generally falls below 12 to 1. While recognizing that there is no set mathematical formula for determining an award of punitive damages, the Alabama Supreme Court has suggested a ratio of 3 to 1 as a `benchmark' from which to determine reasonableness and fair punishment. See Union Security Life Ins. Co. v. Crocker, 709 So.2d 1118 (Ala. 1997) [, cert. denied, ___ U.S. ___, 118 S.Ct. 1515, 140 L.Ed.2d 668 (1998) ]; Life Ins. Co. of Georgia v. Johnson, 701 So.2d 524 (Ala.1997); Bryant v. Bryant Welding & Indus. Maintenance, Inc., 710 So.2d 900 (Ala.1998). However, considering the Defendants' conduct and having analyzed all of the facts of this case as mandated by law, this Court has determined that a 6.6 to 1 ratio is appropriate.
"3. Difference between the punitive damages award and the civil or criminal sanctions that could be imposed for comparable misconduct.
"The Defendant [Jones] could face criminal penalties for perjury which are entirely consistent with the punitive damages awarded in this case.
"4. Profitability of the defendant's conduct.
"This factor does not apply in this case.
"5. Defendants' financial condition.
"No evidence of the Defendants' financial condition is before this Court. An award of $100,000.00 in punitive damages is not likely to have a substantial impact on a national corporation of Kmart's size.
"CONCLUSION
"Without resort to hyperbole, it is abundantly clear that the defendants' conduct deprived a citizen of her most fundamental constitutional rights. The facts reveal a chain of events linked together by one unlawful act after anothera warrantless search based on mere suspicion, an arrest without probable cause, and, most reprehensible, admitted perjury committed solely to perpetuate a groundless prosecution.
"The application of law to these facts leads this Court to the inexorable conclusion that the jury's award of $100,000.00 in punitive damages is entirely consistent with the mandates of law and fundamental fairness.
"Accordingly, after due consideration of all relevant factsparticularly the reprehensibility of the defendants' conductand precedential authorities, this Court affirms the jury's punitive damages award."
We need add nothing to the trial court's analysis of the BMW and Hammond /Green Oil factors in this case. After reviewing that analysis, we agree that, based on the level of reprehensibility of the misconduct evidenced in this case, a $100,000 punitive damages award is sufficient to punish Kmart and Jones and to deter them from further misconduct, without compromising their due process rights. The punitive damages award of $100,000 is hereby affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, HOUSTON, KENNEDY, COOK, and SEE, JJ., concur.
NOTES
[1] Effective October 1, 1995, Rule 50, Ala. R. Civ. P., was amended to rename motions for directed verdict and motions for judgment notwithstanding the verdict as motions for judgment as a matter of law. Rather than continue to use the terminology of the former rule that appears in the briefs and the record in this proceeding, we will use the terms adopted in the amended rule.
[2] The Kmart store at which the event occurred is now closed, and its records are unavailable. Thus, the exact date on which the theft of the lawn chairs occurred cannot be determined.
[3] This Court has previously ordered a remittitur of compensatory damages where it was clear that the plaintiff failed to present sufficient evidence to support the award and that the jury abused its discretion in making that award. See Sears, Roebuck & Co. v. Harris, 630 So.2d 1018 (Ala. 1993), cert. denied, 511 U.S. 1128, 114 S.Ct. 2135, 128 L.Ed.2d 865 (1994); Crosby v. Avon Products, Inc., 474 So.2d 642 (Ala.1985); Coca-Cola Bottling Co., Montgomery v. Parker, 451 So.2d 786 (Ala.1984).
[4] Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986).