I concur with the main opinion insofar as it holds Delchamps liable on the theory of malicious continuation of the prosecution. I dissent insofar as the main opinion holds that the evidence is insufficient to support the plaintiff's theory of malicious initiation of the prosecution. I further dissent from the rationale of the main opinion in remitting the plaintiff's award for mental suffering.
I will address, first, the error in holding that the record does not contain substantial evidence to support liability on the theory of malicious prosecution in the initiation of the shoplifting charge against the plaintiff. The main opinion cites the three Delchamps employees' identifications of the plaintiff as the shoplifter as evidence of probable cause that he was in fact the shoplifter. On the contrary, these identifications, which the record conclusively proves to be false, are a burden, not an exoneration, for Delchamps. A corporation misbehaves only through the misbehavior of its agents, servants, or employees. A misidentification, a want of probable cause, and a lack of good faith in the Delchamps employees constitute respectively a misidentification, a want of probable cause, and a lack of good faith in Delchamps itself under the theory of respondent superior.
In this case, Delchamps employee Scott observed the shoplifter to have a full beard and curly hair and so described the shoplifter to the investigating deputies, but then selected from the photographic line-up the picture of a man with no full beard and no curly hair but only several days' growth of beard, and unkempt hair, and identified the person so depicted, the plaintiff, as the shoplifter. This misconduct by Delchamps employee Scott invokes the consequences of the rule cited by the main opinion as follows:
 "There need be no personal ill will, hate, desire for revenge, or other base and malignant passion. Whatever is done willfully and purposely, whether the motive be to injure the accused, to gain some advantage to the prosecutor, or through mere wantonness or carelessness, if it be at the same time wrong and unlawful within the knowledge of the actor, is in legal contemplation maliciously done." Lunsford v. Dietrich, 93 Ala. 565, 569, 9 So. 308, 310 (1891). *Page 841 
The other two Delchamps employees, Champion and Raines, ostensibly saw the same features on the shoplifter; but employee Champion made the same photographic line-up misidentification as employee Scott, with the same legal consequences as those attendant to Scott's misidentification. The third Delchamps employee, Raines, could be no more certain in his identification from the photographic line-up than to select two of the photographs, one of which depicted the plaintiff. Delchamps is chargeable with knowledge of this uncertainty. From this evidence the jury could reasonably have inferred the existence of all the disputed essential elements of liability in the plaintiff's claim for malicious initiation of the shoplifting prosecution.
Sheriff's Sergeant McGuffie's early statement that the plaintiff might have committed the shoplifting while on a pass or a furlough from the penitentiary is, on its face, mere speculation, as McGuffie admitted in his testimony. Such mere speculation is not even substantial evidence of good faith by Delchamps, much less the conclusive proof of good faith necessary to invalidate a finding of liability on the theory of malicious initiation of the prosecution.
Thus the trial court should be affirmed on the theory of malicious initiation, as well as continuation, of the prosecution. Fortunately, the affirmance on the theory of malicious continuation prevents the erroneous holding against the malicious initiation theory from affecting the parties to the case.
Second, I dissent from the holding that the plaintiff's award should be reduced pursuant to the new rule promulgated by Kmart Corp. v. Kyles, 723 So.2d 572 (Ala. 1998), to the practical effect that the Court will invoke an absence or a paucity of direct evidence of mental suffering as a reason for reducing a jury award for mental suffering, notwithstanding the indirect, objective evidence that persuaded the fact finder to assess the award in the first place. In Kmart this Court performed some judicial legislating; and, in the case at issue, the Court dignifies that judicial legislation as judicial precedent.
Specifically, in Kmart, this Court created the requirement that a plaintiff introduce direct evidence of his or her mental suffering in order to avoid the "stricter scrutiny" that the Court announced it would impose on mental suffering verdicts based only on indirect, albeit objective and reliable, evidence, such as the acts committed against, or tangible losses suffered by, the plaintiff. The logical (but bad) extension of this new requirement would be that plaintiffs seeking compensation for physical pain resulting from even the most horrible acts and injuries will need to emote pathetically to the finder of fact in order to avoid the "stricter scrutiny."
To adopt the Kmart rule, this Court contended that the evolution of the rules of evidence to allow direct evidence of mental suffering distinguished Kmart from all previous cases and thereby made Kmart a case of first impression. Of course, the rules of evidence evolved to allow direct evidence of mental suffering many years before Kmart, as Kmart itself reveals by citing Hardie v. State, 260 Ala. 75, 68 So.2d 35 (1953), which, in turn, tells the history of the evolution, with a case as early as 1929, Alabama Power Co. v. Edwards, 219 Ala. 162, 166,121 So. 543, 546 (1929), wherein a witness was allowed to testify, "I was scared." Nonetheless, in 1998, between fifty and seventy years and countless cases after Alabama jurisprudence established the admissibility of direct evidence of mental suffering, the Kmart Court held that this development in the law rates as a distinguishing feature — such a distinguishing feature that Kmart could be treated as a case of first impression and an opportunity for a new burden on plaintiffs. The operative words in Kmart are:
 "We now[6] clearly allow the testimony of a witness as to his or her mental *Page 842 
anguish. The question thus remains, in the present era,[7]
when we permit a witness to offer evidence as to the witness's own mental anguish, is indirect evidence of mental anguish alone sufficient to support a substantial verdict? We answer this question in the negative. We give stricter scrutiny to an award of mental anguish where the victim has offered little or no direct evidence concerning the degree of suffering he or she has experienced." Kmart, 723 So.2d at 578 (emphasis added).
The Kmart rationale is defective in several ways. First, the over-fifty-year-old change in the rules of evidence is hardly a feature that distinguishes Kmart from the countless intervening cases of mental suffering.
Second, the new Kmart burden contravenes the fundamental purpose of the rules of evidence: to promote the most reliable forms of proof. Rarely does our law presume to dictate to parties the types of admissible evidence they must introduce or combine to prove a fact. In those rare instances where the law does require corroboration, the purpose of the law is to buttress some inherently suspect form of evidence, such as the testimony of a criminal accomplice against a defendant in a criminal prosecution, or testimony by someone that he or she is the agent of another for purposes of binding that other. The new Kmart rule does just the opposite: it requires the least reliable of all forms of evidence — subjective, self-serving emoting — ostensibly to buttress the most reliable form of evidence of mental suffering — the objective facts of the acts committed against, and the tangible losses suffered by, the plaintiff.
The third defect in the new Kmart rule is that it often will confront the plaintiff with the dilemma of losing either way the plaintiff presents his or her case. Many jurors are repelled by a plaintiff's testimony of his or her own suffering. Yet Kmart requires the plaintiff to antagonize these jurors in order to satisfy the Court!
The fourth defect in the Kmart rule, at least as applied in the main opinion in the case at issue, is that it invites testimony by "a professional," 738 So.2d at 838, as an option for direct evidence to corroborate mental suffering. On the one hand, such evidence is admissible. On the other hand, of all the subjects within the ken of the typical jury and therefore without the need for expert testimony, the mental anguish attendant to a false accusation would seem to be the foremost. This country is now crawling with "experts" with more credentials than integrity. We need to avoid unnecessarily inviting an increase in demand for these people.
The fifth defect in the new Kmart rule is that it does not put the Court one iota closer to a fair way of judging whether mental suffering awards are excessive or not. The case at issue is a prime example. This plaintiff introduced enough evidence (to some extent minimized in the main opinion), mostly indirect and objective, but some direct, to persuade the jury to award $399,300 for mental suffering. This Court is ordering a remittitur. Suppose, now, that the plaintiff had submitted to the new rule (not then in effect) and had testified as follows:
 "Oh, it was the most horrible experience of my life. I cried and cried and wrung my hands until my bones were sore. I had a knot in my stomach and a splitting headache and I didn't sleep a wink for two months, all because of what Delchamps did to me."
Would this testimony have deterred the Court from remitting the verdict? If so, would the new rule have promoted justice? If we would have remitted the verdict anyway, would we have been honoring the new rule? Remotely possibly, we might have agreed on less of a remittitur simply because of the additional evidence, but not because the direct evidence would have *Page 843 
given us greater insight to the truth than a like quantity of additional indirect, objective evidence. Our more likely reaction, however, would have been to conclude, as the jury probably would have concluded under this scenario, that the plaintiff was either a liar or a sissy or both, who deserved little award if any at all.
Because the new rule will serve no legitimate purpose and will cause so much trouble, Kmart should be overruled. The question remains, however, what is a legitimate way to review mental anguish verdicts for excessiveness?
In the case at issue, this Court ultimately justifies remittitur by resorting to the finding, or test, that the jury abused its discretion. This test is presently undefined. While abuse of discretion by the jury can be a useful test, we need to define it to ensure that we do not confuse our role and theirs.
The legislature has adopted a definition of substantial evidence in § 12-21-12(d), Ala. Code 1975, to specify the weight and quality of evidence necessary to support a finding of liability and to prove compensatory damages. While this standard heretofore has been used principally to decide motions for summary judgment, motions for judgment as a matter of law, and motions to strike damages for lack of proof, this same standard provides the institutional reliability and the intellectual rigor necessary to define abuse of discretion by the jury.
Subsection 12-21-12(d), as clarified by this Court in West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989), provides that evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." (Emphasis added.) If the evidence concerning mental anguish in a case is of such weight and quality that fair- minded jurors in the exercise of impartial judgment could have reasonably inferred that the plaintiff suffered mental anguish to the extent of the verdict amount, the jury cannot legitimately be deemed to have abused its discretion in returning that verdict. Thus, abuse of discretion in this context should be defined as returning an award for mental anguish substantially greater than fair-minded jurors, in the exercise of impartial judgment, could reasonably have inferred from the evidence that the plaintiff suffered.[8] Such a verdict would be excessive and subject to remittitur to the extent of the excess. In the event the Court should find a verdict excessive by this standard, the Court should remit it only to the least extent necessary to conform it to the standard. A verdict should not be deemed excessive as an abuse of discretion by the jury if fair-minded jurors, in the exercise of impartial judgment, could reasonably have inferred from the evidence that the plaintiff suffered mental anguish to the extent of the verdict amount.
In reviewing a verdict for excessiveness, the Court must exercise intellectual discipline in deferring to the prerogative of the jury to decide whether the evidence proves the sum awarded. The issue for the Court is not whether the evidence proves the sum awarded, but whether the jury, performing to the standard, could reasonably have concluded that the evidence proves the sum awarded. Finally, the reviewing judge or justices should heed the well settled law that the courts must deem as true the tendencies of the evidence most favorable to the verdict winner. Sealing Equipment Products Co. v. Velarde, 644 So.2d 904, 910 (Ala. 1994).
[6] See footnote 7.
[7] These words reflect the insupportable premise that the Court is confronted with a new or novel issue, when, in fact, this state of the law is at least a half century old.
[8] Of course, verdicts including damages for future mental anguish should be reviewed by the same test, adapted to the existing requirement that future mental anguish must be proved with reasonable certainty. *Page 844