This is a Federal Employers' Liability Act ("FELA") case brought by John Bradley, an engineer for Norfolk Southern Railway Company, Inc. ("Norfolk Southern"), against his employer for damages based on injuries resulting from an accident that occurred while Bradley was working as a yard engineer. The accident occurred when Bradley was instructed by *Page 1150 
his supervisor, Ted Jenkins, to move his yard train along the track that he was presently on. However, that track was already occupied by another train, which was stationary. The train Bradley was moving struck the other train; Bradley was thrown from his seat in the engine. He contends that his train was moving at a speed of 7 to 10 miles an hour at the time of the collision, while Norfolk Southern contends the speed was only three to seven miles per hour.
Bradley alleged that Norfolk Southern, through its agent Jenkins, negligently failed to determine whether Bradley's track was clear before ordering Bradley to move the train. Bradley also alleged that Norfolk Southern's negligence proximately caused him to incur a back injury that he says prevents him from working. Norfolk Southern denied liability, alleging that Bradley was contributorily negligent in regard to the cause of the accident. The jury returned a $700,000 general verdict in favor of Bradley. Norfolk Southern filed a "Motion for New Trial or in the Alternative, Motion for Judgment Notwithstanding the Verdict, or in the Alternative, Request for Remittitur of the Verdict." The trial court denied Norfolk Southern's alternative motions, after holding a hearing. The court entered a judgment on the verdict. Norfolk Southern appealed. We affirm.
 I.
Norfolk Southern raises six issues. First, Norfolk Southern contends that the trial court erred in failing to grant its motions for a judgment as a matter of law. Norfolk Southern argues that Bradley's inability to return to work was not caused by the on-the-job accident. Instead, Norfolk Southern contends that Bradley has diabetes, high blood pressure, and a high cholesterol level and that these problems are the proximate cause of Bradley's inability to work. Norfolk Southern contends that it was entitled to a judgment as a matter of law because, it argues, Bradley admitted that his diabetes independently caused his economic losses and because, it says, Bradley could have returned, and in fact did return, to work under any number of "light-duty" assignments, including the job he was doing when he was injured.
The standard of review applicable to a trial court's denial of a motion for a judgment as a matter of law is the same as that applicable to an order denying a motion for a directed verdict.Winn Dixie of Montgomery, Inc. v. Colburn, 709 So.2d 1222, 1223
n. 1 (Ala. 1998).
 "The standard of review applicable to a directed verdict or to a denial of a motion for a directed verdict is whether the nonmoving party has presented substantial evidence in support of his position. If he has not, then a directed verdict is proper. Bailey v. Avera, 560 So.2d 1038, 1039
(Ala. 1990). A verdict is properly directed only where there is a complete absence of proof on a material issue or where there are no disputed questions of fact for the jury to determine. Woodruff v. Johnson, 560 So.2d 1040 (Ala. 1990)."
K.S. v. Carr, 618 So.2d 707, 713 (Ala. 1993).
Evidence is "substantial" if it is "of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). The evidence, viewed in the light most favorable to Bradley, creates a disputed question of fact as to the cause of Bradley's inability to work. The accident occurred on March 13, 1996, shortly before Bradley's shift was to end. Bradley testified that although his shoulder and jaw were sore he went home that day rather than going to a doctor. The next day, he said, he woke up in pain and telephoned his trainmaster, who sent him to see Dr. George E. Rudd at Carraway Industrial Medical Center. Dr. Rudd did not order an X-ray or an MRI test, but determined that Bradley needed only to take medication (Tylenol) for the pain. *Page 1151 
Dr. Rudd released Bradley to work; however, Bradley contends he was still in pain. On March 19, Bradley went to the emergency room at Baptist-Princeton Hospital, where he received an injection containing Novocaine for his back pain. Bradley was also given an 800-mg. dosage of Motrin for pain. Bradley then went to see his family physician, Dr. C. Michael Buchanan, who prescribed additional pain medication and muscle relaxers. Dr. Buchanan also gave Bradley a series of epidural shots and ordered physical therapy. He referred Bradley to Dr. Jeffrey G. Pirofsky for "work hardening." Dr. Pirofsky released Bradley to work, on May 2, 1996, after a "functional capacity evaluation" was performed.
Bradley went back to work, but he contends that he experienced constant pain although he was taking his prescribed pain pills. Bradley had an exacerbation of his back pain on May 29, 1996, when trying to set the hand brake of an engine. He went to see Dr. Pirofsky again, and he continued to see Dr. Buchanan periodically in 1996 for his back pain and to obtain pain medication. In November 1996, Bradley was diagnosed with diabetes. He was treated with insulin shots and was prescribed Glucophage to control his diabetes. He returned to work in January 1997. In February, March, April, and June 1997, Bradley saw Dr. Jason R. Dyken at Kirklin Clinic. Dr. Dyken treated Bradley for both his diabetes and his back pain. Dr. Dyken prescribed the pain medication Ultram for Bradley's back pain. Bradley continued to work, but was still experiencing pain. Dr. Dyken referred Bradley to Dr. Winfield S. Fisher III, a neurosurgeon at the University of Alabama in Birmingham Hospital ("UAB"), who performed an MRI test. Dr. Fisher sent Bradley to Dr. Ron Headrick, at Kirklin Pain Clinic, in August 1997 for epidural blocks. The epidural blocks were repeated in August 1998. Dr. Headrick prescribed the pain medication Neurontin for Bradley's back pain.
Before seeing Dr. Headrick, Bradley was sent by Dr. Fisher to see Dr. Victor S. Roth at UAB's Industrial Medical Clinic. In June 1997, Dr. Roth evaluated Bradley's condition and determined that Bradley was "disqualified from the position of locomotive engineer" because he was taking prescription medication that might affect his alertness and judgment and because he was an insulin-controlled diabetic. Bradley did not return to work; he applied for disability benefits. In his application, Bradley wrote: "According to some FRA regulations, which prohibits on the job administering of the medications I'm taking, chronic back pain prohibits me from sitting any number of hours. I'm suffering from dizziness, drowsiness, diabetes complications of poor circulation and constant pain in my feet." Thereafter, Bradley began seeing Dr. Anna Davis for his back pain. Dr. Davis continued to medicate Bradley's back pain with Neurontin, which Bradley contends made him drowsy. On February 4, 1998, while driving, Bradley passed out because of his diabetes. His car crashed into a median, but Bradley contends he was not injured in the accident.
The jury was presented with evidence indicating that as a result of the train accident Bradley suffered from back pain for which he was prescribed pain medication that affected his alertness and judgment. The jury was also presented with evidence indicating that Bradley suffered from diabetes-related problems, including dizziness. Therefore, a genuine question of fact existed regarding the proximate cause of Bradley's inability to return to work. Bradley presented substantial evidence from which a jury could conclude that the medication Bradley was prescribed to relieve the pain resulting from the back injury prevented him from working. Therefore, the trial court properly denied Norfolk Southern's motions for a judgment as a matter of law.
 II.
Norfolk Southern argues that the trial court erred in refusing to submit a *Page 1152 
special-verdict form to the jury. Norfolk Southern contends that a special-verdict form was required because this was a complex case. The special-verdict form proffered by Norfolk Southern would have permitted the jury to apportion damages between the on-the-job accident and the preexisting and unrelated illnesses that independently would have caused Bradley to miss work. In the order denying Norfolk Southern's motion for a new trial, the court stated that the proposed verdict form was "unduly confusing and would have been susceptible to misinterpretation or conjecture."
The proposed special-verdict form set forth seven questions to be answered by the jury. Question 6 asks: "What amount do you find, without any reduction for any negligence which you may find on the Plaintiff's part, will fairly and adequately compensate the Plaintiff for the injury he received?" Question 7 asks: "What percentage of the damages determined in Question No. 6 above is attributable to a pre-existing condition or to the Plaintiff's previous or subsequent accidents?" Norfolk Southern contends that these questions would have allowed the jury to weigh the causes of Bradley's ability to work and to apportion the damages between the on-the-job accident and the illnesses that may have independently caused Bradley to miss work. The trial court properly refused Norfolk Southern's proposed verdict form, because it was confusing and misleading. Question 6 specifically asks the jury to assess the amount of damages that would fairly and adequately compensate Bradley for his injury. Then Question 7 asks the jury to assess a percentage of the amount of damages from Question 6 that are attributable to "a pre-existing condition or to the Plaintiff's previous or subsequent accidents." The questions are inconsistent and present an incorrect basis for determining damages. The questions would have asked the jury to determine the amount of damages Bradley was entitled to based on the on-the-job accident and then to assign a percentage of those damages as being attributable to another accident or medical condition.
In addition, the trial court specifically charged the jury that Bradley could not recover for any other accident or illness that was not directly the result of the accident in question. Specifically, the trial court instructed:
 "In order for any negligence of the defendants to be the basis of recovery by the plaintiff, such negligence must be the proximate cause in whole or in part of the injury or damages claimed. In order for the negligence to be actionable, the injury or damages must be caused in whole or in part as a direct result of the negligence complained of.
". . . .
 "Secondly, the plaintiff cannot recover for any injury that you find to be attributable to prior [sic] subsequent accident or illness and which is not directly the result of the accident complained of."
The jury was properly instructed that it could compensate Bradley only for injuries resulting from the train accident. The trial court did not err in refusing Norfolk Southern's proposed verdict form.
 III.
Norfolk Southern next contends that the trial court erred in refusing to give instruction no. 17.20, from Alabama Pattern JuryInstructions: Civil (2d ed. 1993); this instruction related to mitigation of damages in FELA cases. Specifically, Norfolk Southern argues that, although the medications Bradley was taking made him "drowsy" and prevented him from working, Bradley made no attempt to mitigate his damages by exploring the question whether he could use other medications. Norfolk Southern states in its brief that it requested APJI 17.20 in a precharge conference that was not transcribed; however, Norfolk Southern did not submit this requested instruction along with the 60 written jury charges it submitted to the *Page 1153 
trial court. In addition, after the jury was charged, Norfolk Southern did not object to the trial court's failure to give this instruction. Thus, nothing in the record indicates that Norfolk Southern either requested the instruction or objected to the trial court's failure to give it. Rule 51, Ala.R.Civ.P., provides:
 "No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete or otherwise improper oral charge unless that party objects thereto before the jury retires to consider its verdict, stating the matter objected to and the grounds of the objection. Submission of additional explanatory instructions shall not be required unless requested by the court. Additional instructions shall be submitted in writing, except that with respect to any additional instruction taken from Alabama Pattern Jury Instructions, it shall be sufficient to identify said instruction on the record by reference to the number and title of said pattern jury instruction."
(Emphasis added.) "By failing to object before the jury retires to deliberate, a party waives any error in the court's instructions." Adriatic Ins. Co. v. Willingham, 567 So.2d 1282,1282 (Ala. 1990) (citations omitted). See also Marshall DurbinFarms, Inc. v. Landers, 470 So.2d 1098 (Ala. 1985) ("`A party waives any possible error as to a trial court's oral charge by failing to specifically object and to state grounds for the objection.'"). Norfolk Southern, by failing to object on the record to the trial court's failure to give APJI 17.20, waived any possible error.
 IV.
Norfolk Southern also contends that the trial court erred in permitting testimony regarding future wage loss, which it says was based on speculation and assumptions regarding how long the plaintiff might have worked. In addition, Norfolk Southern argues that the trial court should have instructed the jury that railroad retirement taxes would have to be deducted from any alleged future wage loss. Ted Johnson, an economist, testified at trial regarding Bradley's economic losses. Johnson testified that Bradley's future loss of income would be $209,000, assuming that Bradley would have worked until age 65. Bradley's attorney asked Johnson to "compute real quick [Bradley's] future loss" assuming that he could work until age 70. Johnson testified that he could not calculate it that quickly but that he could give a "ballpark figure," which he said would be almost double the original figure of $209,000. Defense counsel then objected "to ballpark," but the trial court allowed Johnson to answer that Bradley's future loss would be approximately $375,000 if he worked to age 70. Norfolk Southern contends that the testimony regarding future wages was purely speculative because, it says, no evidence was presented to indicate that Bradley would have continued to work until age 65, much less that he would have worked until age 70. However, Norfolk Southern did not object to the introduction of the future-wage testimony. Norfolk Southern objected only to Johnson's giving a "ballpark" figure. Therefore, Norfolk Southern has waived any error in permitting testimony regarding future wages.
Norfolk Southern also argues that Johnson's calculations failed to take into account the "Tier 1" and "Tier 2" taxes that would be taken out of Bradley's future railroad pay under the Railroad Retirement Act of 1974. However, Norfolk Southern did not object to Johnson's failure to deduct for these taxes. In addition, during cross-examination, Norfolk Southern, in questioning Johnson, used a graphic showing Bradley's wages after deductions for federal, state, and Tier 1 and Tier 2 taxes, as well as deductions for Medicare tax and union dues. Therefore, the jury had the opportunity to consider those taxes. During redirect examination, Bradley's attorney questioned Johnson *Page 1154 
regarding the Tier 1 and Tier 2 taxes and Johnson testified that these taxes are retirement-benefit concepts that should not be considered in calculating future losses. Norfolk Southern had the opportunity to further question Johnson about the Tier 1 and Tier 2 taxes on re-cross-examination, but did not. Absent a timely objection by Norfolk Southern, this Court has nothing to review.
 V.
Norfolk Southern next contends that the trial court erred in permitting testimony regarding "economic difficulty," after the court had issued a standing order prohibiting Bradley from presenting such evidence. Norfolk Southern argues that that testimony improperly permitted Bradley to appeal for jury sympathy. Before trial, Norfolk Southern filed a motion in limine requesting that Bradley not be permitted "to imply that he had difficult economic times or that he has had to cut back on his standard of living during the pendency of this lawsuit." The trial court granted this motion. Norfolk Southern contends that Bradley violated the ruling on the motion in limine because Bradley's counsel argued, and his wife testified, that after the wife had retired from her teaching job she was "forced" to take a part-time job in order to obtain insurance benefits and to supplement the family's income while Bradley was off work. However, Mrs. Bradley never testified that she was "forced" to work; she merely stated that she took a part-time job to supplement Bradley's salary after he was injured. Similarly, Bradley's counsel never stated that Mrs. Bradley was "forced" to go to work; he stated during closing arguments that she took a part-time job in order to obtain insurance for herself. Moreover, Norfolk Southern did not object either to Mrs. Bradley's testimony or to the arguments of Bradley's counsel. Therefore, Norfolk Southern waived any error.
 VI.
Finally, Norfolk Southern contends that the trial court should have ordered a remittitur or should have granted a new trial because, it argues, 1) the award of damages was based on improper calculations; 2) Bradley failed to give sufficient testimony regarding his alleged mental anguish or emotional distress to justify the award; and 3) Bradley was not shown to be permanently disabled or precluded from working for the railroad because of any on-the-job injury. "`Under the Federal Employers' Liability Act the question as to whether the employee's injuries are permanent is generally a question for the jury and the extent of damages in such an action is peculiarly one of fact for the jury.'" Illinois Central Gulf R.R. v. Russell,551 So.2d 960, 963 (Ala. 1989) (quoting Louisville N.R.R. v. Steel,257 Ala. 474, 481, 59 So.2d 664, 670 (1952).
In Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), this Court discussed the standards for reviewing a jury verdict on a claim that the damages award is excessive:
 "The authority to disturb a jury verdict on the ground of excessive damages is one which should be exercised with great caution. . . . .
". . . .
 "We begin by recognizing that the right to a trial by jury is a fundamental, constitutionally guaranteed right, Art. I, § 11, Const. of 1901, and, therefore, that a jury verdict may not be set aside unless the verdict is flawed, thereby losing its constitutional protection. It is only in those cases that a trial court, pursuant to [Ala.] R. Civ. P. 59(f), and this Court, pursuant to Code 1975, § 12-22-71, may interfere with a jury verdict. Insofar as damages are concerned, a jury verdict may be flawed in two ways. First, it may include or exclude a sum which is clearly recoverable or not as a matter of law, or which is totally unsupported by the evidence, where there is an exact standard or rule of law that *Page 1155 
 makes the damages legally and mathematically ascertainable at a precise figure. In these situations, a trial court may, and should, reduce or increase the amount of the verdict to reflect the amount to which the parties are entitled as a matter of law. Second, a jury verdict may be flawed because it results, not from the evidence and applicable law, but from bias, passion, prejudice, corruption, or other improper motive."
493 So.2d at 1378-1379 (citation omitted). "[A] review of a jury verdict for compensatory damages on the ground of excessiveness must focus on the plaintiff (as victim) and ask what the evidence supports in terms of damages suffered by the plaintiff." Pitt v. Century II, Inc., 631 So.2d 235, 239 (Ala. 1993).
Norfolk Southern contends that Bradley would have retired at age 62 and that the most he should have been awarded for his alleged economic losses would have been an amount based on his past wage loss up to the time of trial ($56,762.87) and a future wage loss of $73,915.82. Norfolk Southern also contends that, even according to Johnson's figures, Bradley's total economic loss was only $324,395; therefore, it argues, $375,605 of the jury's award must have constituted compensation for pain and suffering. Norfolk Southern contends that amount is excessive.
 "A jury's verdict is presumed correct and will not be disturbed unless it is plainly erroneous or manifestly unjust. Crown Life Insurance Co. v. Smith, 657 So.2d 821
(Ala. 1994). In addition, a judgment based upon a jury verdict and sustained by the denial of a postjudgment motion for a new trial will not be reversed unless it is plainly and palpably wrong. National Security Ins. Co. v. Donaldson, 664 So.2d 871 (Ala. 1995). Because the jury returned a verdict for [Bradley], any disputed questions of fact must be resolved in [his] favor, and we must presume that the jury drew from the facts any reasonable inferences necessary to support its verdict. State Farm Auto. Ins. Co. v. Morris, 612 So.2d 440, 443 (Ala. 1993). In short, in reviewing a judgment based on a jury verdict, this Court must review the record in a light most favorable to the appellee. Liberty National Life Ins. Co. v. McAllister, 675 So.2d 1292 (Ala. 1995)."
Dempsey v. Phelps, 700 So.2d 1340, 1342 (Ala. 1997).
The jury was presented with evidence from Bradley's expert, Johnson, indicating that Bradley's total economic loss was $324,395, based on an assumed retirement age of 65. Norfolk Southern presented its calculations of Bradley's economic loss, a loss of $130,678.69, based on a retirement age of 62. The determination of the proper amount of damages is a question for the jury. The jury returned a general verdict; therefore, we do not know how much of the $700,000 verdict was based on economic loss. However, Johnson's testimony was a sufficient basis for the jury to determine that Bradley's economic loss was $324,395.
In addition, "[t]his Court has long held that `[t]here is no fixed standard for ascertainment of compensatory damages recoverable . . . for physical pain and mental suffering' and that `the amount of such [an] award is left to the sound discretion of the jury, subject only to correction by the court for clear abuse or passionate exercise of that discretion.'" Daniels v. EastAlabama Paving, Inc., 740 So.2d 1033, 1044 (Ala. 1999) (quotingAlabama Power Co. v. Mosley, 294 Ala. 394, 401, 318 So.2d 260,266 (1975)). There was much evidence in this case regarding the pain that Bradley incurred from his injury, as well as Dr. Davis's prognosis that Bradley will continue to have chronic back problems. "Jury verdicts are presumed correct, `especially where damages awarded are for pain and suffering.'" Daniels, 740 So.2d at 1045 (quoting Coca-Cola Bottling Co. v. Parker, 451 So.2d 786,788 (Ala. 1984)). *Page 1156 
In its order denying Norfolk Southern's motion for a new trial or a remittitur, the trial court stated: "While the Court may well have [awarded] a different [amount] in this case, it cannot conclude that the jury's verdict was the result of passion, bias, corruption or other improper motives." The trial court is in the best position to decide whether a particular verdict is the result of bias, prejudice, or passion. However, reviewing this case on appeal, we must determine whether the verdict "shock[s] the conscience of this Court." Daniels, 740 So.2d at 1049. This Court also might have awarded a different amount if this Court had been the fact-finder; however, we cannot conclude that the jury's verdict shocks the conscience of this Court.
The jury verdict was not "flawed." The amount of damages was supported by the evidence, and the record does not indicate the verdict was the result of bias, prejudice, or passion. Therefore, the trial court did not err in denying Norfolk Southern's motion for a new trial or a remittitur.
AFFIRMED.
Maddox, Houston, Lyons, Brown, Johnstone, and England, JJ., concur.
Cook and See, JJ., concur in the result.