[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 504 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 505 
This negligence case arises out of an automobile accident that occurred on March 19, 1994. The defendant Ben Cleburn Hathcock appeals from a judgment entered upon a jury verdict awarding $600,000 to the plaintiff Marshall Wood and $200,000 to the plaintiff Reba Wood. We affirm.
 I. Facts and Procedural History
On the morning of March 19, 1994, Ben Hathcock was traveling west, behind three automobiles, on Highway 278, which connects Piedmont and Gadsden. Dorothy Law was driving the first vehicle, the one the farthest ahead of Hathcock; Reba Wood, with her husband Marshall Wood as her passenger, was driving the second vehicle; an unknown person was driving the third vehicle, the vehicle immediately ahead of Hathcock. According to the evidence presented at trial, Law, driving the lead automobile, activated her left turn signal as she reached the crest of a hill, to indicate her intent to turn into the driveway of a private residence. As Law stopped on the highway to allow an oncoming car to pass, Mrs. Wood prepared to stop behind her. The third vehicle, however, swerved to the right and headed toward the shoulder of the road past the Woods' vehicle. Hathcock, who testified that he did not see Law's turn signal or brake lights, quickly applied his brakes and turned to the right also; his vehicle hit the rear of the Woods' vehicle, at an angle, shoving it into Law's vehicle.
Mr. and Mrs. Wood were injured in the accident. Soon after the accident, they sought medical treatment for their injuries at a hospital emergency room. Mrs. Wood complained of rib and chest pain; she was treated and released that same day. Her medical expenses totalled $1,068.50. Mr. Wood was treated for a neck strain and was given a cervical collar, and he, too, was released that same day. This visit to the hospital provided Mrs. Wood's only treatment, but the record suggests that it merely marked the beginning of Mr. Wood's treatment.
Over the next two years, Mr. Wood sought treatment from several doctors. On April 7, 1994, almost three weeks after the accident, Mr. Wood sought treatment for his neck. He was diagnosed with a neck strain; he did not return for treatment until February 2, 1995. At that time, he was continuing to complain about pain in his neck. On March 22, 1995, Mr. Wood sought treatment from a chiropractor; the chiropractor treated him 34 times, until August 1995. After Mr. Wood had concluded the chiropractic treatments, he sought medical attention, in December 1996, from a new physician. The record suggests that, after that time, Mr. Wood sought regular treatment from several physicians, including a neurosurgeon, for pain in his neck, shoulders, and back, as well as for what he alleges was a deteriorating mental condition. *Page 506 
The Woods sued Hathcock on March 18, 1996, alleging that Hathcock had negligently or wantonly caused the 1994 automobile accident. As the trial began, defense counsel suggested in her opening argument that the evidence would show that Mr. Wood's alleged injuries were exaggerated, or, alternatively, were not related to the 1994 accident. She specifically stated that the evidence would show significant gaps of time between treatments, especially during the year following the accident. At the conclusion of the opening statements, the Woods' counsel called Mrs. Wood as his first witness. During her testimony, Mrs. Wood on several occasions referred the Woods' financial condition, indicating that it was poor, and at times suggesting that it caused them to delay Mr. Wood's medical visits. Mrs. Wood also said that as a result of the accident she and her husband had been poor and that their poverty had caused them to lose their house and their upholstery business. Defense counsel, who had previously made a motion in limine to exclude all testimony as to the Woods' poverty, properly objected to Mrs. Wood's statement.[1]
The trial court entered a judgment as a matter of law ("JML") in favor of Hathcock on the wantonness claim, but submitted the negligence claim to the jury. The jury returned a verdict in favor of the Woods, awarding them $600,000 for Mr. Wood's physical injuries, mental anguish, and lost earnings and $200,000 for Mrs. Wood's physical injuries and the loss of consortium of her husband. Hathcock moved for a remittitur or, alternatively, for a new trial. The court conducted a hearing on the motion and then denied it. The court entered a judgment on the verdict. This appeal followed.
 II. Analysis
Hathcock first argues that the trial court erred in not entering a JML for him on the Woods' negligence claim because, he says, he did not breach a duty of care. He contends that he was driving at a safe speed and was following the vehicle in front of him at a lawful distance, but that he was nevertheless unable to see that the Woods' vehicle was stopping, because his view of its brake lights was obstructed by the vehicle between the Woods and Hathcock.
The standard by which we review an appeal from a ruling on a motion for a JML is materially indistinguishable from the standard by which we review a summary judgment. Simply, this standard is "`whether the nonmoving party has presented substantial evidence in support of his position.'" Norfolk So. Ry. v. Bradley, 772 So.2d 1147, 1150 (Ala. 2000) (quoting K.S. v. Carr, 618 So.2d 707, 713 (Ala. 1993)). Evidence is "substantial" only if it is "of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders LifeAssurance Co. of Fla., 547 So.2d 870, 871 (Ala. 1989). A JML should be entered only when "there is a complete absence of proof on a material issue or where there are no disputed questions of fact for the jury to determine." Norfolk So., supra, 772 So.2d at 1150 (quoting K.S. v. Carr, 618 So.2d at 713). In determining whether material *Page 507 
questions of fact exist, the court must view the evidence presented at trial in a light most favorable to the nonmoving party. Given that principle, we must resolve all factual disputes in favor of the Woods.
Hathcock relies, in part, on Tinsley v. Henderson, 613 So.2d 1268
(Ala. 1993). In that case, Henderson was driving down a two-lane road, at a speed below the legal limit, when his truck struck and killed Timothy Tinsley, as Timothy was riding his bicycle. Timothy's parents sued Henderson, claiming that he had negligently or wantonly caused the accident. This Court affirmed a summary judgment in Henderson's favor, holding that the Tinsleys had failed to present substantial evidence indicating that Henderson's actions were not reasonably prudent.Tinsley, 613 So.2d at 1271.
This present case is distinguishable from Tinsley, because Hathcock could reasonably have expected that the vehicles traveling in front of him could suddenly slow down or stop at any time; indeed, slowing down or stopping is part of the nature of traffic on a two-lane road. Thus, while Hathcock claims he was confronted with "a sudden emergency not of his making," he was not presented with an unexpected emergency as Henderson was in Tinsley. The jury could reasonably infer from the evidence that Hathcock breached a duty of care by not anticipating that the vehicles he was following might stop. See Martin v. Arnold, 643 So.2d 564, 567 (Ala. 1994) ("a motorist is negligent if he fails to discover a vehicle that he reasonably could have discovered in time to avoid injury").
Hathcock also argues that the trial court erred by not allowing defense counsel to cross-examine Dr. Thomas Conboy, one of the Woods' expert witnesses, as to the probationary status of his professional license. The trial court refused to admit this evidence, concluding that its prejudice outweighed its relevance. In Ayres v. Lakeshore Community Hospital,689 So.2d 39 (Ala. 1997), this Court stated the following general rule regarding the cross-examination of an expert witness:
 "[T]he trial judge has substantial discretion as to the questions a party is allowed to ask of an expert witness. The scope and extent of cross-examination [are] vested in the trial court's sound discretion, and this court will not reverse on the basis of the trial court's rulings regarding cross-examination unless an abuse of discretion has occurred."
689 So.2d at 41. Thus, we must determine whether the trial court abused its discretion by curtailing defense counsel's cross-examination as to matters involving Dr. Conboy's probation imposed by his governing professional association.
Hathcock argues in his brief that the evidence of Dr. Conboy's probation was relevant to show bias on the part of Dr. Conboy. The record, however, reveals that during a hearing on pretrial motions defense counsel repeatedly urged the trial court to allow this evidence on the basis that it was germane to the question of Dr. Conboy's veracity.[2] The record also shows *Page 508 
during the trial defense counsel made a similar argument during her offer of proof: "This is a serious case, and the defendant ought to be able, in fairness, to qualify [Dr. Conboy's] truthfulness. . . ." This Court's consideration of this issue is limited to the grounds raised before the trial court. See Lance, Inc. v. Ramanauskas, 731 So.2d 1204, 1220 (Ala. 1999) (stating that "specific objections waive all other objections").
The Alabama Rules of Evidence clearly allow cross-examination as to "matters affecting the credibility of the witness." Rule 611(b), Ala R. Evid. Rule 608, however, requires the trial judge to keep a watchful eye on evidence concerning the character or conduct of a witness. Rule 608(b), which governs evidence of specific conduct by a witness, states:
 "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime as provided in Rule 609, may be not be inquired into on cross-examination of the witness nor proved by extrinsic evidence."
The only kind of evidence that may be presented as to an expert's "character for truthfulness" is evidence regarding the expert's "general reputation in the community for untruthfulness," or opinion testimony from another competent witness. Charles W. Gamble, McElroy's AlabamaEvidence § 142.01(3) (5th ed. 1996). The excluded evidence in this case, however, is rather specific in that it pertains to certain events that led to Dr. Conboy's being placed on probation by his licensing board. Because specific evidence bearing on a witness's reputation for veracity is forbidden by Rule 608(b), Ala. R. Evid, we conclude that the trial court did not abuse its discretion by preventing defense counsel from exploring these matters. We further conclude that the trial court did not abuse its discretion in excluding evidence of Dr. Conboy's probation, which is inextricably intertwined with these previous acts.
Next, Hathcock argues that the trial court erred by allowing Mrs. Wood to comment on the Woods' poor financial condition. He contends that her comments were unfairly prejudicial and requires a reversal of the judgment. We disagree.
"It is well settled that it `is highly prejudicial to a defendant for the jury to be improperly informed as to the . . . poverty of the plaintiff.'" Bennett v. Brewer, 682 So.2d 448, 449 (Ala. 1996) (quotingLiberty Nat'l Life Ins. Co. v. Kendrick, 282 Ala. 227, 230, 210 So.2d 701,703 (1968)). Consequently, evidence of this character is generally inadmissible, see Miller v. Dacovich, 355 So.2d 1109, 1110 (Ala. 1978);Johnson v. Harrison, 404 So.2d 337, 339-40 (Ala. 1981); Mutual Sav. LifeIns. Co. v. Smith, 765 So.2d 652, 654 (Ala.Civ.App. 1998); and McElroy'sAlabama Evidence, supra, § 189.05(1). Nevertheless, we have recognized that evidence of this character "may be relevant and admissible when it goes to a material issue in the case." Johnson v.Harrison, 404 So.2d 337, 339 (Ala. 1981).
Mrs. Wood's testimony as to the loss of the family business was admissible for purposes of proving the damages claimed, because it supported an inference that the Woods lost the business because injuries he sustained in the March 19, 1994, accident caused Mr. Wood to be unable to work. Therefore, Mrs. Wood's comments concerning the Woods' poverty tended directly to prove Mr. Wood's diminished earning capacity; thus, they were relevant to a material issue in the case. See generallyCarnival Cruise Lines, Inc. v. Snoddy, 457 So.2d 379, 381 (Ala. 1984) ("In a *Page 509 
personal injury action, a plaintiff is entitled to recover both the value of the work time lost prior to trial (`lost earnings') and the value of the reduction in his ability to earn a living (`impairment of earning capacity').").
Evidence regarding a party's financial condition may also be admissible when the party's opponent has "opened the door by commenting upon or asking questions concerning [the] party's financial standing." McElroy'sAlabama Evidence, supra, § 189.05(2)(c). Rebuttal evidence, however, must not be "substantially unconnected with the [previously admitted] illegal evidence." Cook v. Latimer, 274 Ala. 283, 288, 147 So.2d 831, 835
(1962).
Counsel for Hathcock suggested in her opening statement that the temporal gaps in Mr. Wood's medical treatment called into question his claim that his injuries were caused by the automobile accident or called into question whether his injuries were as severe as he maintained they were. In Alabama Power Co. v. Bruce, 209 Ala. 423, 96 So. 346 (1923), this Court addressed similar facts with respect to a plaintiff who underwent a surgical procedure that he alleged had been made necessary by an accident he alleged had been caused by the defendant 10 months earlier. In that case, defense counsel commented during closing arguments that the plaintiff's delay in seeking treatment suggested that his injuries either were not caused by the accident or were not as serious as he had claimed. Plaintiff's counsel responded in his closing argument by stating that the plaintiff had not sought medical treatment because of the poverty of the plaintiff's family. The defendant argued on appeal that the statements of the plaintiff's counsel were improper and warranted an order granting a new trial. This Court disagreed, holding that the poverty argument by the plaintiff's counsel was not improper, given the prior suggestion by defense counsel regarding the plaintiff's failure to obtain immediate medical treatment. Alabama Power,209 Ala. at 427, 96 So. at 349. In that case, defense counsel's remarks made the plaintiff's poverty evidence relevant for an admissible purpose.
We conclude that the principle applied in Alabama Power Co. v. Bruce
also applies in the present case. Defense counsel's opening statements suggested to the jury that the evidence would show that Mr. Wood did not see a physician concerning his injuries for almost 10 months after visiting the doctor on April 7, 1994. The thrust of this statement was to suggest either that Mr. Wood was exaggerating the extent of his original injuries or that, given the nearly 10-month lapse in treatment, his current physical condition could not be found to have been proximately caused by the automobile accident. In response to these remarks and in anticipation of defense counsel's theory of the case, Mrs. Wood testified that she and her husband had been unable to afford consistent medical care and that they had been forced to sell their home to pay for his treatment once they could no longer ignore the necessity for it. Mrs. Wood's testimony as to the Woods' inability to afford medical care, therefore, provided the jury with a concise explanation for why her husband let almost 10 months pass without seeking treatment for his maladies. Further, her testimony regarding the sale of the family home explained why they could later afford adequate treatment. Consequently, given the facts of this case, we conclude that the trial court did not err by allowing this evidence.
Finally, Hathcock argues that the $800,000 award of compensatory damages was excessive. Specifically, he contends that the evidence did not support the individual awards to Mr. and Mrs. Wood *Page 510 
totalling $600,000 and $200,000 respectively.
We have consistently held that jury verdicts carry a presumption of correctness and that that presumption is strengthened when the trial court denies a motion for a new trial. Northeast Alabama Reg'l Med. Ctr.v. Owens, 584 So.2d 1360, 1366 (Ala. 1991). The appellate courts of this state do not favor setting aside a jury verdict if doing so can be avoided. Id. When we review a jury verdict on the ground of excessiveness, our review focuses on the plaintiff, and we must ask what the evidence supports in terms of the loss or harm suffered by the plaintiff. Daniels v. East Alabama Paving, Inc., 740 So.2d 1033, 1044
(Ala. 1999). In the absence of a flawed verdict, no statute allows us to invade the jury's province to award compensatory damages. Id.
The evidence suggests that Mrs. Wood incurred medical expenses totalling $1,068.50. The evidence as to the total medical expenses incurred by Mr. Wood is unclear. Although evidence indicated that Mr. Wood had incurred medical expenses totalling $4,358.25, that amount was payable only to a single physician. The record indicates that Mr. Wood saw numerous other medical and psychological professionals, but we are unable to determine the cost of those services from the record before us. Whatever the value or the cost of those services may have been, it is apparent that the bulk of Mr. Wood's award, like the bulk of Mrs. Wood's award, was intended to compensate for more than medical costs. While Mrs. Wood's damages award was apparently intended largely to compensate her for the loss of her husband's consortium, Mr. Wood's award entailed elements of lost earnings (based on his testimony that he had projected the year 2013 as his year of retirement) and, importantly, mental anguish.
Regarding the award to Mrs. Wood, we note that the jury heard a substantial amount of evidence regarding Mr. Wood's mental condition after the accident. Dr. Conboy, testifying for the Woods, concluded that the head injury Mr. Wood had suffered in the accident had altered his personality and had caused him to become emotionally fragile. The evidence suggests that Mr. Wood's condition left him permanently unable to support, comfort, and care for Mrs. Wood. Consequently, we are reluctant to disturb the jury's award to her.
Much of Mr. Wood's $600,000 compensatory-damages award was apparently attributable to his claim for damages for mental anguish. With respect to awards to compensate for mental anguish, we have stated:
 "A physical injury or physical symptom is not a prerequisite for a finding of mental anguish. Kmart Corp. v. Kyles, 723 So.2d 572, 578 (Ala. 1998). A plaintiff is required only to present some evidence of mental anguish, and once the plaintiff has done so the question whether the plaintiff has suffered mental anguish and, if so, the question of how much compensation the plaintiff is entitled to for the mental anguish are questions for the jury, Kyles, 723 So.2d at 578."
Wal-Mart Stores, Inc. v. Goodman, [Ms. 1981683, December 22, 2000]789 So.2d 166, 178 (Ala. 2000).
The record contains ample evidence regarding Mr. Wood's mental condition following the accident. The evidence suggests that he frequently experienced intense emotional outbursts and generally suffered from depression because of his chronic pain and his inability to work. Mr. Wood's expert testimony suggested that his head injury had caused a change in his cognitive ability, *Page 511 
his memory, and his emotional capacity to handle elements of daily life. The evidence also suggests that Mr. Woods attempted suicide in 1998; a suicide attempt is another acute indicator of his mental condition. Considering the totality of this evidence, we are reluctant to disturb a judgment based on the jury's verdict.
III. Conclusion
We conclude that the trial court properly denied the defendant's motion for a remittitur or a new trial. The judgment is affirmed.
AFFIRMED.
Houston, See, Harwood, and Stuart, JJ., concur.
[1] Defense counsel, however, did not object to statements made by plaintiffs' counsel during his closing argument, in which he asked the jury to compensate the Woods for their injuries so that they could regain their home. Therefore, any error in regard to those statements in the closing argument of the plaintiffs' counsel has not been preserved for review.
[2] On one occasion, defense counsel stated during her offer of proof:
 "[DEFENSE COUNSEL]: I think this [evidence] is huge, when as an expert — I'm not talking about some little article he wrote somewhere out in the universe. I'm talking engaged as an expert witness, testified falsely, and has admitted to testifying falsely. And I can't, according to the plaintiffs, cross-examine this expert in front of the jury about his giving false testimony in regard to his qualifications. The most basic thing that an expert does is to tell you what he can and can't do."
We believe that this colloquy, which occurred at the end of the hearing, accurately summarized defense counsel's arguments before the trial court.