Rebecca Hyatt is the owner of a parcel of property ("the Hyatt property") located in the southeast quarter of the northeast quarter of Section 3, Township 11 South, Range 1 West, in Blount County. Noel Chambless and Elaine Chambless also own a parcel of property ("the Chambless property") located in the southeast quarter of the northeast quarter of Section 3, Township 11 South, Range 1 West. The Chambless property is contiguous to, and generally north of, the Hyatt property. *Page 1108 
After a dispute arose between Hyatt and the Chamblesses regarding the location of the boundary line between their properties, the Chamblesses sued Hyatt; her immediate predecessors in title, Russell Pinyan and Diane Pinyan; and Regions Bank ("Regions"), the holder of a mortgage on the Hyatt property. Against Hyatt only, the Chamblesses alleged a claim seeking a determination of the location of the boundary line. As the basis of that claim, the Chamblesses asserted that a line ("the Chambless line") allegedly established by the legal descriptions in two deeds, one of which was in the Chamblesses' chain of title and the other in Hyatt's chain of title, established the true boundary line. In addition to their boundary-line claim, the Chamblesses also alleged against Hyatt, the Pinyans, and Regions a claim seeking to quiet title to the Chambless property.
Hyatt, the Pinyans, and Regions answered, and Hyatt counter-claimed. In her counterclaim, Hyatt also alleged a claim seeking a determination of the location of the boundary line. Hyatt based her boundary-line claim on allegations that the deeds relied upon by the Chamblesses did not unambiguously establish the boundary line and, therefore, that the actions of the parties' predecessors in title had established the boundary line along a line ("the Hyatt line") that was north of the Chambless line. Hyatt also alleged a claim seeking damages for trespass on the disputed strip of property ("the strip") bounded on the north by the Hyatt line and bounded on the south by the Chambless line. Finally, Hyatt alleged a claim seeking a determination that she and her predecessors in title had acquired ownership of the strip by adverse possession. Hyatt demanded a trial by jury of all issues triable by a jury.
The trial court impaneled a jury to decide the boundary-line claims and Hyatt's trespass claim, while the trial court simultaneously heard the evidence to decide the Chamblesses' quiet-title claim and Hyatt's adverse-possession claim. The evidence introduced at trial established the following material facts. In 1917, Reuben Washburn acquired title to a single parcel of property that contained both the Hyatt property and the Chambless property. Washburn's deed described that parcel as follows:
 "All that part of the SE 1/4 of the [NE] 1/4 of Sec[tion] 3[,] T[ownship] 11 [South,] R[ange] 1 W[est,] lying NE of public road and contains about 17 acres. Blount County, Alabama."
A mortgage on that entire parcel executed by Reuben Washburn on January 3, 1927, indicates that Washburn still owned that entire parcel on that date. However, on December 15, 1927, Washburn deeded to Rufus B. Simms and Mamie Simms the following described parcel:
 "[A]ll that part of the SE 1/4 of NE 1/4 lying northeast of public road except 2 acres deeded to J.S. Pinion [sic] [a]ll in Section 3[,] Township 11 [South,] Range 1 West. . . ."
(Emphasis added.) The property described in the deed from Washburn to the Simmses is the Chambless property. The property referred to as an exception from the property conveyed by that deed, i.e., the "2 acres deeded to J.S. Pinion [sic]," is the Hyatt property. The deed conveying the Hyatt property from Washburn to J.S. Pinyan is not in the record. However, it appears that that deed did not describe the Hyatt property any more specifically than as two acres in the southeast quarter of the northeast quarter of Section 3, Township 11 South, Range 1 West because when J.S. Pinyan subsequently deeded the Hyatt property to H.L. Pinyan in 1929, that deed described the Hyatt property as: *Page 1109 
 "Two acres (2) in the SE 1/4 of the [NE] 1/4 of Section 3 — T[ownship] 11 [South,] R[ange] 1 West. . . ."
In the fall of 1945, Mamie Buffington, who apparently had formerly been Mamie Simms, together with her then husband, W.E. Buffington, and Etta Batson, deeded to Deward Chambless, the father and predecessor in title of Noel Chambless, the Chambless property. The deed to Deward Chambless described the Chambless property as follows:
 "[A]ll that part of SE 1/4 of NE 1/4 lying NE of public road (Except about 2 acres deeded to J.S. Pinyan [),] all in Sec[tion] 3[,] T[ownshi]p 11 [South,] R[ange] 1 W[est]. . . ."
(Emphasis added.)
On September 29, 1942, H.L. Pinyan and his wife deeded the Hyatt property to V.E. Whitehead. That deed described the Hyatt property as follows:
 "[A] part of the SE 1/4 of the NE 1/4 of Section 3, Township 11 [South], Range 1 West, described as follows: Beginning at the southeast corner; thence North 28 rods;[1] thence in a southwest direction 20 rods to Cullman Road; thence along said road in a southeasterly direction 24 rods to point of beginning. Containing 2 acres more or less."
The deed from H.L. Pinyan to V.E. Whitehead is the earliest evidence in the record of a legal description of the Hyatt property describing it by metes and bounds ("the metes and bounds description"). The metes and bounds description encompasses an area of 1.47 acres rather than two acres. The record does not contain any evidence regarding how the scrivener of that deed came up with the metes and bounds description.
In 1942, V.E. Whitehead and his wife deeded the Hyatt property to Allen Pinyan and his wife. That deed described the Hyatt property using the metes and bounds description. On January 7, 1943, Allen Pinyan and his wife deeded the Hyatt property to Lee Pinyan and his wife. That deed also described the Hyatt property using the metes and bounds description.
Lee Pinyan owned the Hyatt property until he died in 1985. In that year, one of Lee Pinyan's heirs commissioned a survey of the Hyatt property ("the 1985 survey"). The 1985 survey described the Hyatt property as follows:
 "A part of the SE 1/4 of the NE 1/4 of Section 3, Township 11 South, Range 1 West, Blount County, Alabama, more particularly described as follows: From the SE corner of said SE 1/4 of the NE 1/4; thence N 0 degrees 50 16 W, along the section line 79.00 feet to the point of beginning; thence continue N 0 degrees 50 16 W, along the section line, 383.00 feet to a pipe set; thence S 68 degrees 15 38 W, 279.22 feet to a pipe set; thence S 43 degrees 28 E, 385.16 feet to the point of beginning. Containing 1.15 acres, more or less."
(Emphasis added.)
The legal description of the Hyatt property contained in the 1985 survey became the legal description that was used in all subsequent conveyances of the Hyatt property.
After the completion of the 1985 survey, the heirs of Lee Pinyan deeded the Hyatt property to the Gossetts. In 1986, the Gossetts deeded the Hyatt property to the Sparkses, who mortgaged the property. The mortgage was eventually assigned to *Page 1110 
Regions. In 1989 or 1990, the Sparkses deeded the Hyatt property to Regions. In August 1990, Regions deeded the Hyatt property to Russell Pinyan and Diane Pinyan, and the Pinyans mortgaged the Hyatt property to Regions. In December 1990, the Pinyans deeded the Hyatt property to Hyatt subject to the mortgage held by Regions, and Hyatt gave the Pinyans a second mortgage on the property.
Deward Chambless, who had acquired the Chambless property in 1945, continued to own it until he died in 1994. Upon Deward's death, Noel Chambless inherited one-half of Deward's interest in the Chambless property and Noel's brother, Benny Chambless, inherited the other one-half interest. Soon thereafter, Noel and his wife Elaine purchased Benny's one-half interest.
At the close of all the evidence, the Chamblesses moved for a judgment as a matter of law ("a JML") on the boundary-line claims and Hyatt's trespass claim. The Chamblesses argued that the 1945 deed by which Deward Chambless acquired title to the Chambless property and the 1943 deed by which Lee Pinyan and his wife acquired title to the Hyatt property established the same line as the boundary line between the two properties. They further argued that those deeds were unambiguous in establishing that boundary line. Finally, they argued that, when two unambiguous deeds to coterminous parcels of property establish the same unambiguous boundary line, the deeds establish the boundary line as a matter of law, and the court must set the boundary line according to the deeds. The trial judge agreed. Having thus concluded that the Chamblesses were entitled to a JML on the boundary-line claims, the trial judge further reasoned that, because the deeds established as a matter of law that Hyatt did not own the strip, the property upon which she claimed the Chamblesses had trespassed, the Chamblesses were also entitled to a JML on Hyatt's trespass claim. Therefore, the trial court granted the Chamblesses a JML on Hyatt's trespass claim as well as on the boundary-line claims. The trial judge reserved judgment on the Chamblesses' quiet-title claim and Hyatt's adverse-possession claim.
Several weeks later, on January 14, 2005, the trial judge entered a separate written judgment in which he found in favor of the Chamblesses on the boundary-line claims, found in favor of the Chamblesses on Hyatt's trespass claim, and found in favor of the Chamblesses on their quiet-title claim with respect to Hyatt and Regions. However, that judgment did not rule on the Chamblesses' quiet-title claim with respect to the Pinyans. With respect to Hyatt's adverse-possession claim, the written judgment found in favor of Hyatt in part and found in favor of the Chamblesses in part.
On February 1, 2005, Hyatt and the Pinyans moved for a new trial. Among other grounds, they alleged that the trial court had erred in granting the Chamblesses a JML on the boundary-line claims and on Hyatt's trespass claim because, they alleged, Hyatt had introduced substantial evidence establishing a jury question regarding whether the Chambless line constitutes the boundary line. The Chamblesses objected to the new-trial motion and moved the trial court to amend its judgment to find in favor of the Chamblesses with respect to all issues involved in Hyatt's adverse-possession claim. On February 18, 2005, the trial court entered a written order: (1) amending its January 14, 2005, judgment by finding in favor of the Pinyans on the Chamblesses' quiet-title claim; (2) denying the Pinyans and Hyatt's motion for a new trial; and (3) *Page 1111 
denying the Chamblesses' motion to amend the judgment.
On February 14, 2005, Hyatt filed a notice of appeal seeking appellate review by the supreme court. However, on February 28, 2005, the Chamblesses filed a motion to alter, amend, or vacate that portion of the order entered on February 18, 2005, in which the trial court had amended its judgment to find in favor of the Pinyans on the Chamblesses' quiet-title claim. On March 4, 2005, the trial court entered an order denying the Chamblesses' motion to alter, amend, or vacate. Thereafter, the Chamblesses cross-appealed to the supreme court. The supreme court transferred Hyatt's appeal and the Chamblesses' cross-appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
Although Hyatt in her appeal and the Chamblesses in their cross-appeal raise a number of issues, the dispositive issue is whether the trial court erred in determining the location of the boundary line between the Hyatt property and the Chambless property instead of allowing the jury to decide that issue. Citing Ex parte Taylor, 828 So.2d 883 (Ala. 2001), Hyatt argues that she was entitled to have the jury determine the location of the boundary line.
In Ex parte Taylor, the supreme court held that, if (1) a case involves both equity claims and legal claims; (2) the equity claims and the legal claims share a common issue; and (3) one of the parties has demanded a jury trial, that party must be afforded a jury trial of the equity claims as well as the legal claims. In the case now before us, the boundary-line claims, the trespass claim, the adverse-possession claim, and the quiet-title claim all shared a common issue, i.e., the location of the true boundary line. Consequently, Hyatt was entitled to a jury trial of all of those claims. See Ex parteTaylor, supra. Thus, if Hyatt introduced sufficient evidence regarding the location of the true boundary line to create a jury question regarding that issue, the trial court erred in determining that issue instead of allowing the jury to decide it. In determining whether the trial court erred in determining the location of the boundary line as a matter of law in response to the Chamblesses' motion for a JML on the boundary-line claims, we apply the following standard of review:
 "`We apply the same standard of review to a ruling on a motion for a JML as the trial court used in initially deciding the motion. This standard is "indistinguishable from the standard by which we review a summary judgment."' Alabama Power Co. v. Aldridge, 854 So.2d 554, 560 (Ala. 2002) (quoting Hatkcock v. Wood, 815 So.2d 502, 506
(Ala. 2001)). `We must decide whether there was substantial evidence, when viewed in the light most favorable to the plaintiff, to warrant a jury determination.' Id. (citing City of Birmingham v. Sutherland, 834 So.2d 755
(Ala. 2002)). `[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833,837 (Ala. 2003).
An examination of the deed by which Deward Chambless acquired title to the Chambless property reveals that it does not specify any boundary line between the Chambless property and the Hyatt property. It merely described the Chambless property as follows:
 "[A]ll that part of SE 1/4 of NE 1/4 lying NE of public road (Except about 2 acres deeded to J.S. Pinyan [),] all in Sec[tion] *Page 1112 
3[,] T[ownshi]p 11 [South,] R[ange] 1 W[est]. . . ."
(Emphasis added.) From that description, the Hyatt property could be any 2 of the 17 acres in the southeast quarter of the northeast quarter lying northeast of the public road. Therefore, the trial court's conclusion that that deed specified an unambiguous boundary line was erroneous. Moreover, because that deed does not specify any boundary line, the trial court erred in concluding that it contained a description of a boundary line that agreed with the boundary line described in the deed by which Lee Pinyan and his wife acquired title to the Hyatt property.
The deed by which Lee Pinyan and his wife acquired title to the Hyatt property does specify a boundary line, but that deed is also problematic. When the Hyatt property was partitioned from the single 17-acre parcel by conveyance from Reuben Washburn to J.S. Pinyan in 1927, it apparently was described as 2 acres in the southeast quarter of the northeast quarter of Section 3, Township 11 South, Range 1 West without any metes and bounds description. Certainly, it was so described when J.S. Pinyan conveyed the Hyatt property to H.L. Pinyan in 1929. Moreover, all conveyances of the Chambless property subsequent to the partition of the Hyatt property excepted twoacres conveyed to J.S. Pinyan. However, the metes and bounds description contained in the deed by which Lee Pinyan and his wife acquired title to the Hyatt property encompasses only 1.47 acres. No evidence was introduced indicating that any portion of the Hyatt property was conveyed to an owner of the Chambless property after the Hyatt property was partitioned from the single 17-acre parcel that encompassed both the Chambless property and the Hyatt property. Thus, the metes and bounds description does not account for 53 of an acre of the Hyatt property as it was described before the use of the metes and bounds description began. Because of (1) the discrepancy between the original description of the Hyatt property and the metes and bounds description; (2) the discrepancy between the 1.47-acre area described in the metes and bounds description and the exception of two acres of Hyatt property from the deed by which Deward Chambless acquired title to the Chambless property; and (3) the absence of a description of any boundary line in the deed to Deward Chambless, the trial court erred in concluding that the deed by which Lee Pinyan and his wife acquired title to the Hyatt property and the deed by which Deward Chambless acquired title to the Chambless property both unambiguously described the same boundary line. The evidence established a jury question regarding the location of the true boundary line. See Ex parte Taylor, supra, andSmitherman, supra. Consequently, the trial court erred (1) in entering a JML in favor of the Chamblesses on the boundary-line claims; (2) in entering a JML in favor of the Chamblesses on Hyatt's trespass claim; (3) in determining Hyatt's adverse-possession claim instead of allowing the jury to determine it; and (4) in determining the Chamblesses' quiet-title claim instead of allowing the jury to determine it. Therefore, we reverse the trial court's judgment and remand the case with instructions for the trial court to afford Hyatt a jury trial of all the claims.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the Judges concur.
[1] A rod is equal to 16.5 feet. Thus, 28 rods equals 462 feet, 20 rods equals 330 feet, and 24 rods equals 396 feet. *Page 1113